30 F.3d 1115
 22 Media L. Rep. 2313
 Ian Y. LIND, Plaintiff-Appellee,
v.
Gary G. GRIMMER; Linda K. Rose-Hill; James C.F. Wang;
Robert Y. Watada, Individually, and in their capacities as
Commissioners of the Campaign Spending Commission, State of
Hawaii; and Jack M.K. Gonzales, Individually, and in his
capacity as the Executive Director of the Campaign Spending
Commission, State of Hawaii, Defendants-Appellants.
 No. 93-16021.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1994.
Decided July 22, 1994.
 
 Steven S. Michaels, Deputy Atty. Gen., Honolulu, HI, for defendants-appellants.
 R. Malia Taum, Honolulu, HI, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before: SCHROEDER, D.W. NELSON and CANBY, Jr., Circuit Judges.
 Opinion by Judge CANBY.
 CANBY, Circuit Judge:
 
 
 1
 Hawaii Rev.Stat. Sec. 11-216(d) prohibits disclosure of information concerning investigations undertaken by Hawaii's Campaign Spending Commission. The State of Hawaii appeals the district court's grant of summary judgment, which enjoined enforcement of the statute on the ground that it violates the First Amendment of the United States Constitution, both as applied to appellee Lind and on its face. We affirm.
 
 I. BACKGROUND
 
 2
 When a complaint is filed with Hawaii's Campaign Spending Commission, the Commission is required to determine whether there is probable cause that a campaign spending violation occurred, and if so, whether that violation was unintentional or willful. Haw.Rev.Stat. Sec. 11-216. If the Commission finds probable cause that a willful violation occurred, it must advise the lieutenant governor, and it may initiate a prosecution. Haw.Rev.Stat. Sec. 11-216(f)-(g). If it finds probable cause that an unintentional violation occurred, it must order the cited party to remedy that violation. Haw.Rev.Stat. Sec. 11-216(f). If it finds no probable cause, it need take no further action. See id.
 
 
 3
 At issue in this appeal is Haw.Rev.Stat. Sec. 11-216(d), which requires that all aspects of the Commission's activities remain confidential while an investigation is pending, and that the entire record of an investigation remain confidential if the Commission determines that there is no probable cause that a violation occurred:
 
 
 4
 Until a determination of probable cause is made by the commission, all proceedings, including the filing of the complaint, investigation, and hearing shall be confidential unless the person complained of requests an open hearing. In the event the commission determines that probable cause does not exist, the complaint shall be dismissed and the entire record of the proceedings shall be kept confidential at the option of the person complained of. Breach of this provision is a crime punishable by up to thirty days in jail and a fine of up to $1,000. Haw.Rev.Stat. Sec. 11-228; Sec. 706-663.
 
 
 5
 Appellee Ian Lind was author, editor, and publisher of the "Hawaii Monitor," an independent non-partisan newsletter devoted to discussing election campaign issues. In June of 1992, Lind published in his newsletter the fact that he had filed a complaint against the University of Hawaii Professional Assembly alleging that the Assembly failed to disclose certain campaign contributions during the 1990 election and that it made excessive and prohibited contributions in support of Governor John D. Waihee's election. The Assembly responded by asking the Commission to clarify the applicability of section 11-216(d) to Lind's complaint. The Commission, in turn, decided to treat this request as a complaint against Lind for violation of section 11-216(d). Lind responded by bringing this action in federal district court seeking a declaration that section 11-216(d) violated his rights under the First Amendment, and an injunction against its enforcement.
 
 
 6
 Just fifteen days after Lind's complaint was filed, the parties submitted to the district court a stipulation of settlement, proposing that the court dismiss Lind's complaint with prejudice and declare that section 11-216(d) violated the First Amendment and was unenforceable. The district court, however, refused to do so without additional briefing. Thereafter, the State changed its position and decided to defend the statute. Following cross motions for summary judgment, the district court held section 11-216(d) unconstitutional as applied to Lind, held it unconstitutionally overbroad, and permanently enjoined its enforcement. This appeal followed.
 
 II. LEVEL OF SCRUTINY
 
 7
 A statute regulating speech is content-neutral only if the state can justify it without reference either to the content of the speech it restricts or to the direct effect of that speech on listeners. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). Here, the State asserts a variety of purposes for section 11-216(d); it serves: (a) to prevent the Commission's credibility from being invoked to support "scandalous charges," (b) to protect "fledgling political groups and candidates [from] the publicity that would befall them from open proceedings," (c) to prevent candidates and their supporters from being "unduly tarred by a vindictive complaint," (d) to promote settlement of disputes over violations of spending laws, and (e) to eliminate distractions and collateral concerns that would exist if commission proceedings were made public. Because these concerns all stem from the direct communicative impact of speech, we conclude that section 11-216(d) regulates speech on the basis of its content.[1] Moreover, the speech it restricts, speech about political processes and governmental investigations of wrongdoing by public officials, falls near to the core of the First Amendment. See New York Times v. Sullivan, 376 U.S. 254, 270-71, 84 S.Ct. 710, 720-21, 11 L.Ed.2d 686 (1964). Therefore, the statute is presumptively unconstitutional. See R.A.V. v. City of St. Paul, --- U.S. ----, ----, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992). It will survive scrutiny only if it is narrowly drawn and is necessary to serve a compelling state interest, Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988), or if the speech it regulates otherwise is undeserving of full protection, see, e.g., R.A.V., --- U.S. at ----, 112 S.Ct. at 2543 (listing categories); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (devaluing information acquired through civil discovery).
 
 III. AS APPLIED TO LIND
 
 8
 * It is clear that the speech restricted by section 11-216(d) does not fall into any of the traditional categories, such as fighting words and obscenity, that are undeserving of full First Amendment protection. Nonetheless, Hawaii contends that the First Amendment does not protect individuals who divulge the fact that they have filed a complaint with its Campaign Spending Commission. It relies on Cohen v. Cowles Media Co., 501 U.S. 663, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991). In Cowles, the Supreme Court considered whether the First Amendment barred a plaintiff from recovering damages under Minnesota's promissory estoppel law when a newspaper breached its promise of confidentiality given to the plaintiff in exchange for information. The Court held that the First Amendment did not bar recovery, for two reasons. First, it noted that promissory estoppel is a law of general applicability, and its application to the press posed only an "incidental" and "constitutionally insignificant" burden on speech. Id. at 670-72, 111 S.Ct. at 2519. Second, the Court observed that the agreement between Cohen and the newspaper was in the nature of a contract, and that any legal obligations and restrictions on publication of truthful information therefore were "self-imposed." Id. The State argues that Lind similarly struck a bargain with the Commission when he filed a complaint knowing that, by doing so, he would be subject to section 11-216(d)'s confidentiality provisions. The State contends that he therefore imposed section 11-216(d)'s restrictions on himself, and like the newspaper in Cowles, cannot now complain that those restrictions violate his First Amendment rights.
 
 
 9
 This novel argument is based upon a dramatic misconception of both the import of Cowles and the effect of section 11-216(d). Section 11-216(d) is not a content-neutral law of general applicability, but one intended to impose direct and significant restrictions on speech. Thus, the State is not relieved of its burden (as was the plaintiff in Cowles ) of demonstrating that the challenged provisions are necessary to serve a compelling interest. As we point out below, it has failed to carry that burden. Furthermore, the restrictions placed on Lind's speech, embodied in section 11-216(d), are state-created, and existed independently of, and prior to, any interaction between Lind and the Campaign Spending Commission. Therefore, the interaction between Lind and the Commission cannot be characterized as a simple bargain in which Lind obtained use of the Commission's investigatory machinery in exchange for his silence. The State may not condition Lind's ability to trigger an investigation on the theory that by filing a complaint he bargained away his First Amendment rights. Cf. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Cowles, in short, is irrelevant to the case at hand.
 
 
 10
 We conclude that section 11-216(d) regulates fully protected speech.[2] Unless it is narrowly tailored and necessary to promote compelling state interests, it cannot stand.
 
 B
 
 11
 According to Hawaii, section 11-216(d) promotes its interest in "the free functioning of the electoral system," and in "fostering an 'uninhibited, robust, and wide-open' debate out in the political arena." We have no doubt that these are compelling interests. We conclude, however, that prohibiting disclosure that a complaint has been filed does little to serve these interests, and indeed in many ways is antithetical to them.
 
 
 12
 * The State is concerned primarily that, without section 11-216(d), candidates might be discouraged from entering political races; they are "not paid public servants, who can be expected to endure the slings and arrows of criticism in the press and elsewhere." The State acknowledges that section 11-216(d) does not prevent anyone from publicly charging candidates or their supporters with violations of spending regulations, and that it does not prevent people from publicly airing whatever evidence they may have to support their allegations. It contends, however, that disclosure of the fact that a complaint has been filed somehow lends the State's imprimatur to such charges, dramatically increasing their effectiveness. In the State's words, "At its core, the confidentiality requirement precludes the Commission's credibility from being invoked to buttress scandalous charges in the heat of a campaign."
 
 
 13
 These concerns are insufficient to justify restrictions on Lind's speech. The effect that the State fears can be countered by the truthful assertion that anyone can file a complaint with the Commission, for any reason, regardless of its merit. Because the State has no influence over when or whether a complaint is filed, the fact of filing simply cannot signal the State's approval of a complainant's charges.[3] As Justice Brandeis observed nearly seventy years ago, "If there be time to ... avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." Whitney v. California, 274 U.S. 357, 377, 47 S.Ct. 641, 649, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).
 
 
 14
 In fact, what the State is attempting to do is exactly the sort of thing that the First Amendment is designed to guard against. See Landmark, 435 U.S. at 845, 98 S.Ct. at 1544. Hawaii argues, in effect, that it is justified in restricting political speech about complaints before the Campaign Spending Commission in order to promote other political speech. However, it is not the function of government to promote speech it deems more valuable and to suppress speech it deems less valuable. See Whitney, 274 U.S. at 375-376, 47 S.Ct. at 648. The speech that Hawaii seeks to restrict may have a discouraging effect on certain candidates and their supporters. And as the State observes, some of those affected by that speech may not (yet) be paid public servants. But they surely are public figures, and therefore they must be prepared to endure a heightened level of criticism--including charges of campaign spending improprieties--precisely in order to promote First Amendment values. See New York Times Co. v. Sullivan, 376 U.S. 254, 273, 84 S.Ct. 710, 722, 11 L.Ed.2d 686 (1964). Candidates' supporters, by injecting themselves into public debate and attempting financially to influence its outcome, also must be prepared to suffer what to them may be unpleasant discussion of their contribution practices. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 351, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789 (1974).
 
 
 15
 With regard to the danger that people knowingly may bring unmeritorious charges of campaign spending improprieties in order to harass, the State has not shown that the victim will be without civil tort remedies. See generally New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Moreover, even if criminal sanctions were necessary to discourage vexatious complaints, section 11-216(d) is not narrowly drawn to achieve that purpose; it also prohibits disclosure of complaints legitimately and truthfully alleging serious improprieties.
 
 2
 
 16
 Secondarily, the State asserts that confidentiality facilitates the Commission's work. It predicts that permitting disclosure that a complaint has been filed would encourage people to lodge unmeritorious complaints, stimulate public inquiries concerning the status of pending investigations, and bring public pressure to bear in attempts to influence the Commission's investigations, all of which will overburden and distract the Commission. The State also contends that disclosure that a complaint has been filed would remove an important incentive for cited parties to settle, thereby further increasing the Commission's work load.
 
 
 17
 In Landmark, the Supreme Court held unconstitutional a Virginia statute that prevented third parties from divulging truthful information regarding proceedings before the state Judicial Inquiry and Review Commission. Virginia advanced many of the arguments that Hawaii presses here, claiming that its statute was necessary to preserve the "orderly administration of justice." Landmark, 435 U.S. at 843, 98 S.Ct. at 1543. In rejecting Virginia's position, the Court noted that, although the state asserted a compelling interest, it had failed to produce a "solidity of evidence" showing that the proscribed speech posed a sufficiently imminent threat to that interest. Id. at 845, 98 S.Ct. at 1544. Hawaii similarly has failed to carry that burden here. It has "offered little more than assertion and conjecture to support its claim that without criminal sanctions the objectives of the statutory scheme would be seriously undermined." Id. at 841, 98 S.Ct. at 1542.
 
 
 18
 In the event that the Commission becomes overburdened with unmeritorious complaints, public inquiries, or cases that fail to settle,[4] it could solve this problem without impairing First Amendment rights by streamlining its investigatory processes or hiring more staff. See id. at 843, 98 S.Ct. at 1543 (requiring consideration of less restrictive alternatives). As for public pressure's influencing the Commission's decisions, such possibilities rarely justify abridgment of First Amendment rights. See Landmark, 435 U.S. 829, 98 S.Ct. 1535; Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). The vast majority of deliberative bodies undertake investigations with full exposure to the public, and with no apparent ill effects. The State offers no reason to doubt that the situation would be any different here.
 
 
 19
 We conclude that to the extent Haw.Rev.Stat. Sec. 11-216(d) prevents an individual from disclosing the fact that he filed a complaint with the Campaign Spending Commission, it is unconstitutional.[5]
 
 IV. OVERBREADTH
 
 20
 * In addition to holding section 11-216(d) invalid as applied to Lind, the district court found the section unconstitutionally overbroad, and enjoined its enforcement in all circumstances. As a preliminary matter, the State argues that the district court erred in reaching this issue for a variety of reasons, none of which we find meritorious.
 
 
 21
 First, Hawaii insists that the district court's overbreadth determination must be reversed because the court granted summary judgment on the issue sua sponte, depriving the State of the notice required by Fed.R.Civ.Proc. 56. We need not decide whether the district court erred in this regard. Whether a statute is facially unconstitutional is a matter of law, which this court reviews de novo. Therefore, any lack of notice would not compel reversal. See Schwartz v. Pillsbury, Inc., 969 F.2d 840, 845 n. 3 (9th Cir.1992).[6]
 
 
 22
 Next, the State argues that the district court should have abstained under Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and certified the question of the statute's construction to the Hawaii Supreme Court. We review for abuse of discretion a district court's decision not to abstain under Pullman, Ripplinger v. Collins, 868 F.2d 1043, 1048 (9th Cir.1989), and find no error.
 
 
 23
 A federal court should abstain only in exceptional circumstances, Houston v. Hill, 482 U.S. 451, 467, 107 S.Ct. 2502, 2512, 96 L.Ed.2d 398 (1987) and only where the complaint involves sensitive areas of social policy that federal courts ought not to enter, Ripplinger, 868 F.2d at 1048. While campaign spending regulation may qualify as an area that federal courts should avoid if possible, section 11-216(d) does not regulate campaign spending. It regulates speech about campaign spending. This is not an area of peculiarly local concern, but an area primarily of federal concern. See id. ("abstention is inappropriate for cases where statutes are justifiably attacked on their face as abridging free expression" (citations and quotations omitted)). Furthermore, abstention is appropriate only if the statute at issue is "fairly subject" to an interpretation that will save it from invalidation. Harman v. Forssenius, 380 U.S. 528, 534-35, 85 S.Ct. 1177, 1181-82, 14 L.Ed.2d 50 (1965). In view of the variety of applications of section 11-216(d) that are unconstitutional (see below), we agree with the district court that nothing short of a complete rewrite of the statute will save it. In these circumstances, neither abstention nor certification is appropriate. Houston v. Hill, 482 U.S. at 470-71, 107 S.Ct. at 2514. The district court did not abuse its discretion in refusing to abstain, and we reject the State's suggestion that we stay our hand and certify the matter to the Supreme Court of Hawaii.[7]
 
 
 24
 Finally, the State contends that we may not reach the question of overbreadth because, if the statute is unconstitutional as applied to Lind, he has no standing to challenge it as overbroad. See, e.g., Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 501-04, 105 S.Ct. 2794, 2800-02, 86 L.Ed.2d 394 (1985):
 
 
 25
 [While facial invalidation due to overbreadth may be proper when the statute is constitutional as applied to the party before the court, it] is otherwise where the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish.... There is then no want of a proper party to challenge the statute, no concern that an attack on the statute will be unduly delayed or protected speech discouraged. The statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact.
 
 
 26
 Id. at 504, 105 S.Ct. at 2802. See also Renne v. Geary, 501 U.S. 312, 324, 111 S.Ct. 2331, 2340, 115 L.Ed.2d 288 (1991). Brockett and Geary, however, deal with an issue different from that presented by Lind. Overbreadth doctrine is an exception to the usual rules of standing, designed to prevent the chilling effect overbroad statutes may have on parties not before the court. See Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 575-76, 107 S.Ct. 2568, 2572-73, 96 L.Ed.2d 500 (1987). Where a statute's overbreadth is substantial, its chilling effect is likely to be significant, and consequently the entire statute may be invalidated to protect First Amendment interests. See id. Brockett and Geary simply recognize that when a statute's only unconstitutional application is the one directed at a party before the court, invalidation of that portion of the statute obviates any chilling effect the statute may have, and thus eliminates any justification for declaring the statute invalid in all its applications.
 
 
 27
 Here, in contrast, after striking the portion of section 11-216(d) that is unconstitutional as applied to Lind, and even assuming that the statute may have some constitutional applications, we are left with the fact that section 11-216(d) has numerous other potential applications that are unconstitutional. In this circumstance, the dangers that the overbreadth doctrine is designed to avert--a potential chilling effect on speech and lack of a proper party before the court--are present. Consequently Lind has standing to raise the issue.
 
 B
 
 28
 We find that section 11-216(d) imposes criminal penalties for a substantial range of constitutionally protected conduct, while its "plainly legitimate sweep" is quite limited. See Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). Accordingly, the statute must be invalidated on its face. See id.
 
 
 29
 Not only does section 11-216(d) prohibit complainants from divulging the fact that they have filed a complaint, but it also prohibits third parties, who are strangers to the Commission's investigation, from divulging anything that they might lawfully learn about an investigation, both before and after the Commission makes a probable cause determination. This prohibition is patently unconstitutional. See Landmark, 435 U.S. 829, 98 S.Ct. 1535. If the Commission makes a finding of no probable cause, the statute prohibits those same third parties, should they legally acquire a portion of the record of the Commission's proceedings, from releasing it. This, too, is unconstitutional. See id.; see also New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Section 11-216(d) also prohibits all persons appearing before the Commission, not just the complainant, from divulging both the fact that a complaint has been filed and what they told the Commission--both before and after the Commission makes a probable cause determination.[8] While the validity of some of these prohibitions as applied during the pendency of the investigation may be arguable, we need not rule on that question because the prohibitions are not so limited. Once the Commission has made its probable cause determination, their application clearly is unconstitutional. Cf. Butterworth, 494 U.S. at 626, 110 S.Ct. at 1378. Section 11-216(d) plainly prohibits a wide range of constitutionally protected conduct.
 
 
 30
 The State has failed even to offer examples of plainly constitutional applications of the section. Accordingly, on this record we must conclude that the overbreadth of section 11-216(d) is "not only ... real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick, 413 U.S. at 615, 93 S.Ct. at 2917. Whether the State, with a showing of more substantial interests, could sustain a far more narrowly drawn statute, is a question we need not address today. All we hold is that the statute before us, on the record presented, is fatally overbroad.
 
 V. CONCLUSION
 
 31
 Section 11-216(d) of the Hawaii Revised Statutes is unconstitutional both on its face and as applied to appellee Lind. Accordingly, the judgment of the district court is affirmed, and the case remanded to the district court for a determination of the reasonable attorney's fees to be awarded to Lind in connection with his efforts in the district court and on this appeal. See 42 U.S.C. Sec. 1988.
 
 
 32
 AFFIRMED and REMANDED.
 
 
 
 [1]
 This conclusion comports with that reached by the majority of courts that have considered comparable statutes. See, e.g., Butterworth v. Smith, 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (confidentiality of grand jury testimony); Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (testimony before judicial review board); Baugh v. Judicial Inquiry & Review Comm'n, 907 F.2d 440 (4th Cir.1990) (same); First Amendment Coalition v. Judicial Inquiry & Review Board, 784 F.2d 467 (3d Cir.1986) (en banc) (same); Kamasinski v. Judicial Review Council, 797 F.Supp. 1083 (D.Conn.1992) (same)
 
 
 [2]
 We reject the State's alternative assertion that section 11-216(d) only restricts speech concerning information a speaker acquires with the assistance or intervention of the government, and that such speech is unprotected by the First Amendment. The fact that a complaint has been filed is in no meaningful sense information acquired only by virtue of the government's assistance or intervention
 
 
 [3]
 In this respect, the confidentiality provisions at issue here differ from secrecy provisions in the grand jury context. Grand jury investigations are triggered either by the grand jury itself or by a request from a prosecutor. Consequently, the mere fact of a grand jury investigation carries with it the imprimatur of official suspicion
 Another reason to keep secret the existence of a grand jury investigation is to prevent those being investigated from fleeing. Butterworth v. Smith, 494 U.S. 624, 632, 110 S.Ct. 1376, 1381, 108 L.Ed.2d 572 (1990). This justification is irrelevant here as well, because those being investigated by the Campaign Spending Commission must be notified when a complaint is filed. See Haw.Rev.Stat. Sec. 11-216(a)-(c).
 
 
 [4]
 The dynamics of settlement here differ from those in judicial review board inquiries. In that context, if there is strong evidence of corruption or of ethical violations, a review board's primary goal is to remove the offending judge from the bench rapidly. See First Amendment Coalition v. Judicial Inquiry & Rev. Bd., 784 F.2d 467, 476 (3d Cir.1986). Experience has shown that a particularly effective method to achieve this goal is to provide a judge with the ability quietly to retire in exchange for confidentiality concerning the charges brought against him. Id. In contrast, the Campaign Spending Commission has as its goal the cessation of non-willful spending violations and the prosecution of willful violations; its goal is not to remove probable violators from a race. Therefore, the prospect of settlement is valuable mainly only to decrease the Commission's work load
 
 
 [5]
 The majority of courts that have addressed this question (all in the context of judicial review board or ethics Commission proceedings) have come to the same conclusion. See First Amendment Coalition v. Judicial Inquiry & Review Board, 784 F.2d 467 (3d Cir.1986); Doe v. Florida Judicial Qualifications Comm'n, 748 F.Supp. 1520 (S.D.Fla.1990); Providence Journal Co. v. Newton, 723 F.Supp. 846 (D.R.I.1989). But see, Kamasinski v. Judicial Review Council, 797 F.Supp. 1083 (D.Conn.1992)
 
 
 [6]
 The State implies that issues of fact are involved, having filed a Rule 56(f) motion in order to present statistics that most complaints to the Commission are resolved informally (and alleging that section 11-216(d) restrictions do not apply to informally resolved complaints). The district court properly rejected this motion, noting that these statistics have no bearing on whether the statute is overbroad. The issue is not how many times section 11-216(d) has been applied, but rather the extent to which it potentially may impair First Amendment rights
 
 
 [7]
 Virginia v. American Booksellers Ass'n, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), is not to the contrary. Although the Supreme Court abstained in that First Amendment case, it noted that it did so because of several "unique" factors. Id. at 393, 108 S.Ct. at 643. Among these factors was that the state conceded that the statute at issue was unconstitutional on the plaintiff's construction and that it therefore declined to defend it against that construction. Such is not the case here
 
 
 [8]
 The State urges us to apply a narrowing construction restricting application of the post-probable cause confidentiality provision to release of the official record. This provision reads:
 In the event the Commission determines that probable cause does not exist, ... the entire record of the proceedings shall be kept confidential at the option of the person complained of.
 Read in isolation, this sentence appears to be "fairly subject" to the construction the State urges. See Harman v. Forssenius, 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). However, in the context of the entire statute, which seeks to keep confidential not just official documents, but all information about the Commission's proceedings, we agree with the district court that the construction the State urges makes little sense. That construction is even less plausible in light of the broad purposes that the State insists underlie the statute. Cf. Erznoznik v. City of Jacksonville, 422 U.S. 205, 217, 95 S.Ct. 2268, 2277, 45 L.Ed.2d 125 (1975) ("Particularly where ... appellee offers several distinct justifications for the ordinance in its broadest terms, there is no need to assume the ordinance can or will be decisively narrowed.").