**Robert EAKINS, Plaintiff,**

v.

**State of NEVADA, Defendant.**

**No. CV–N–01–0324–DWH(RAM).**

United States District Court,
D. Nevada.

June 25, 2002.

Terri Keyser–Cooper, Reno, NV, Diane K. Villancourt, Santa Cruz, CA, for plaintiff.

Frankie Sue Del Papa, Attorney General, David K. Neidert, Deputy Attorney General, Criminal Justice Division, Carson City, NV, for defendant.

Allen Lichtenstein, Las Vegas, NV, Daniel P. Tokaji, ACLU Foundation of Southern California, Los Angeles, CA, for intervenor.

### ORDER

HAGEN, District Judge.

Before the court are cross motions for summary judgment. Plaintiff Robert Eakins filed a motion for summary judgment (# 25) on September 4, 2001. Defendant opposed (# 39), and plaintiff replied (# 43). Defendant filed with its opposition a cross motion for summary judgment (# 40). All plaintiffs filed papers in opposition (# 44 & # 47), and defendant replied (# 54).

### I. *Background*

Plaintiff Eakins filed this lawsuit on May 24, 2001 against Steven Daniels and the City of Reno. Plaintiff brought the action under 42 U.S.C. § 1983 to challenge the constitutionality of NRS 199.325, which makes it a misdemeanor to knowingly file false allegations of misconduct against a peace officer. By minute order (# 24) dated August 30, 2001, the court granted the State of Nevada's motion to intervene to defend the constitutionality of the statute. On September 20, 2001, the parties stipulated to dismiss with prejudice Steven Daniels and the City of Reno from the lawsuit. By order filed November 8, 2001(# 51), the court granted a motion to intervene as party plaintiffs on behalf of the American Civil Liberties Union of Nevada ("ACLUN"), and individuals Kathleen Von Tobel, Brother David Buer, Magdelena Anderson, Jovan Luna, and Tina Lemon.

The case as it currently stands is a facial challenge to NRS 199.325, and it is before the court on cross motions for summary judgment. Because the case concerns a question of law and there being no dispute concerning the facts, it is unnecessary to delve into the factual scenarios each plaintiff brings to the court.

### II. *Analysis*

#### A. *Standing for a Facial Challenge*

 Plaintiffs raise a facial challenge to NRS 199.325. As the Ninth Circuit recently explained, "facial challenges 'are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court.'" *4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1111 (9th Cir.1999) (quoting *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)). A finding that a statute is facially unconstitutional results in invalidation of the law itself. *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998).

██ "Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decision-maker[1] and where the regulation is challenged as overbroad." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citing Members of *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 and n. 15, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Litigants also have standing in First Amendment overbreadth cases to "challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), *accord, Perry v. Los Angeles Police Dept.,* 121 F.3d 1365, 1368 (9th Cir.1997), *cert. denied,* 523 U.S. 1047, 118 S.Ct. 1362, 140 L.Ed.2d 511 (1998). This occurs "because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute." *Village of Schaumburg,* 444 U.S. at 634.

██ The overbreadth doctrine confers standing on a party who demonstrates that a statute "'create[s] an unacceptable risk of the suppression of ideas' and that he has suffered an injury." *Young v. Simi Valley,* 216 F.3d 807, 815 (9th Cir.2000) (quoting *Nunez v. City of San Diego,* 114 F.3d 935, 949 (9th Cir.1997)), *cert. denied,* 531 U.S. 1104, 121 S.Ct. 844, 148 L.Ed.2d 723 (2001). Overbreadth standing is an exception to traditional standing and is premised upon preventing the self-censorship and chilling of expression of individuals not before the court. *See Young,* 216 F.3d at 815. To meet the requirements for overbreadth standing, the litigant must establish: (1) an injury-in-fact; and (2) an ability to satisfactorily frame the issues in the case. *Clark v. City of Lakewood,* 259 F.3d 996, 1010–1011 (9th Cir.2001). In establishing an injury-in-fact, the plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (citations omitted). A litigant may also bring a facial challenge to a regulation provided his own conduct is protected and by arguing the statute is not capable of ever being applied in a valid manner and would chill the speech of others. *4805 Convoy, Inc.,* 183 F.3d at 1112 n. 4.

Plaintiffs' claims are grounded in the First Amendment; therefore, "they are entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own." *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Further, all plaintiffs have sufficiently alleged an injury in fact such that they have standing to bring this facial challenge.[2] Thus, insofar as plaintiffs challenge the statute on the basis of overbreadth, they have standing to bring a facial challenge. *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("Because overbroad laws, like vague ones, de-

---

1. Defendant argues that the court should decline to engage in resolving this facial challenge because such challenges are disfavored and because NRS 199.325 does not vest unbridled discretion in the decision maker. The court will not address this issue because the court concludes that plaintiffs have standing to raise the facial challenge on the basis of the overbreadth doctrine.

2. The court addressed the issue of whether the intervenor-plaintiffs asserted a protectable interest in its order regarding the motion to intervene. (# 51.)

ter privileged activity, our cases firmly establish appellant's standing to raise an overbreadth challenge.")

### B. *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.1996), and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir.1998). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982)).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]here is no genuine issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the non-moving party's claim implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1149 (9th Cir.1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); and *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987)).

If cross motions for summary judgment are filed, the court must consider each motion separately and determine whether that party is entitled to a judgment under Rule 56. In making this determination, the court must evaluate the evidence offered in support of each cross-motion. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136–1137 (9th Cir.2001).

### C. *Application of the Summary Judgment Standard*

NRS 199.325, entitled Filing false or fraudulent complaint or allegation of misconduct against peace officer, provides as follows:

> 1. A person who knowingly files a false or fraudulent written complaint or allegation of misconduct against a peace officer for conduct in the course and scope of his employment is guilty of a misdemeanor.

Plaintiffs rely heavily on the Central District of California opinion in *Hamilton*

*v. City of San Bernardino*, 107 F.Supp.2d 1239 (C.D.Cal.2000), in arguing that NRS 199.325 is unconstitutional. In that case, the court applied the analysis set forth in *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), and determined that California Penal Code § 148.6 was unconstitutional under the free speech clause of the First Amendment. *Id.* Section 148.6 is very similar to NRS 199.325.[3] As discussed below, defendant argues that the court should not rely so heavily on *Hamilton* in its analysis. However, the court finds *Hamilton* persuasive and will follow the analysis set forth there in determining the constitutionality of NRS 199.324.

First, defendant argues that *Hamilton* does not address the Nevada statute's criminal requirement that guilt of filing a false report be established beyond a reasonable doubt, which is higher than the standard set forth in *New York Times Co. v. Sullivan*, requiring that defamation be established by clear and convincing proof. 376 U.S. 254, 280, 84 S.Ct. 710 (1964). The *Hamilton* court recognized that "because they serve the same purposes, criminal and civil libel statutes should be subject to the same constraints and limitations." 107 F.Supp.2d at 1243 (citing *Garrison v. Louisiana*, 379 U.S. 64, 67, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ("[w]here criticism of public officials is concerned, [there is] no merit in the argument that criminal libel statutes serve interests distinct from those secured by civil libel laws, and therefore

should not be subject to the same limitations.")) In *Hamilton*, the court assumed without deciding that the California statute criminalized only defamatory statements which accord with the *New York Times* standard. 107 F.Supp.2d at 1244. Under *New York Times*, a public official may recover damages for defamation relating to his official conduct only if he proves that the statement was made with "actual malice," that is, with knowledge or reckless disregard of falsity. 376 U.S. at 279–80, 84 S.Ct. 710. The court concludes that NRS 199.325 comports with the *New York Times* standard because it requires that false allegations of police misconduct be made *knowingly*. Moreover, any argument that the degree of proof required for a conviction under a speech chilling statute forbidden by the First Amendment somehow breathes life back into the statute, impermissibly exalts statute over Constitution.

Second, defendant argues that *Hamilton* is unique in its analysis because the Fifth Circuit, the Arizona Court of Appeals, and the District of Connecticut have concluded that similar statutes are constitutional. However, after reviewing the cases cited by defendant,[4] it is plain that these three decisions are inapplicable. First, these cases were decided before *R.A.V.* was decided. Second, the statutes at issue in those cases are distinguishable because they concern false reports made *to* police officers, rather than false reports *concerning* police misconduct.[5] Those statutes are

---

3. Section 148.6 provides, in pertinent part: "Every person who files any allegation of misconduct against any peace officer … knowing the allegation to be false, is guilty of a misdemeanor."

4. Defendant cites *Gates v. City of Dallas*, 729 F.2d 343 (5th Cir.1984), *Appletree v. City of Hartford*, 555 F.Supp. 224 (D.Conn.1983), and *State v. Terrell*, 168 Ariz. 112, 811 P.2d 364 (Ct.App.1991).

5. For example, the statute at issue in *Gates* was Texas Penal Code Ann. § 37.08(a), which provides: "A person commits an offense if he: (1) reports to a peace officer an offense or incident within the officer's concern, knowing that the offense or incident did not occur; or (2) makes a report to a peace officer relating to an offense or incident within the officer's concern knowing that he has no information relating to the offense or incident." 729 F.2d at 344 n. 2.

not content-based regulations like the Nevada statute at issue here.

As the Supreme Court has held, "[c]ontent-based regulations are presumptively invalid." *R.A.V.*, 505 U.S. at 382, 112 S.Ct. 2538. "A statute regulating speech is content-neutral only if the state can justify it without reference either to the content of the speech it restricts or to the direct effect of that speech on listeners." *Lind v. Grimmer*, 30 F.3d 1115, 1117 (9th Cir. 1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995). If the state's justifications for the statute stem from the "direct communicative impact of the speech," then the statute regulates speech on the basis of its content. *Id.*, 30 F.3d at 1118.

Although content-based regulations are presumed invalid, certain areas of speech may be regulated because of the "constitutionally proscribable content" of those areas of speech. *R.A.V.*, 505 U.S. at 382, 112 S.Ct. 2538. Thus, it has been determined that defamation may be regulated, as long as the regulations meet the actual malice standard set forth in *New York Times*. *Id.* However, such regulations must still comport with the First Amendment, meaning that content-based discrimination which is unrelated to the proscribable content is not permitted. *Id.* Thus, while the government may proscribe libel, it may not "make the further content discrimination of proscribing *only* libel critical of the government." *Id.*, 505 U.S. at 383–84, 112 S.Ct. 2538.

■ Plaintiffs argue, and defendant does not dispute, that the statute at issue here is a content-based regulation. The court agrees: The statute criminalizes defamation which is critical of police officers only, and not other public officials. Further, all of the state's justifications for the statute, i.e. preventing damage to officers' reputations, maintaining officers' relationship with community, and preventing violence against officers resulting from the public's decreased confidence in officers, refer to the direct effect of the proscribed speech on its listeners, police officers. Therefore, the statute regulates speech on the basis of content. As such, it is presumptively invalid under *R.A.V.* According to *R.A.V.*, the statute can stand only if it falls within one of the three exceptions set forth by the Court or if it survives strict scrutiny. *Id.*, 505 U.S. at 388–390, 395, 112 S.Ct. 2538.

In *R.A.V.*, the Court set forth the following as valid grounds for regulating proscribable speech such as defamation: (1) "when the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable," *id.*, 505 U.S. at 388, 112 S.Ct. 2538; (2) where the "content-defined subclass of proscribable speech is that the subclass happens to be associated with particular 'secondary effects' of the speech, so that the regulation is '*justified* without reference to the content of the … speech,'" *id.*, 505 U.S. at 389, 112 S.Ct. 2538; or (3) where "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot," *id.*, 505 U.S. at 390, 112 S.Ct. 2538. The court will address each of these grounds in turn.

### 1. Whether the basis for the content discrimination consists of the very reason the entire class of speech is proscribable

The *R.A.V.* court reasoned that this ground, "having been adjudged neutral enough to support exclusion of the entire class of speech from First Amendment protection, is also neutral enough to form the basis of distinction within the class." *Id.*, 505 U.S. at 388, 112 S.Ct. 2538. In illustrating this principle, the Court gave several examples, including the following:

"A State might choose to prohibit only that obscenity which is the most patently offensive *in its prurience—i.e.,* that which involves the most lascivious displays of sexual activity. But it may not prohibit ... only that obscenity which includes offensive *political* messages." *Id.*

Thus, it is necessary to determine whether the State's reason for distinguishing between defamation against police officers and defamation against other public officials consists of the very reason defamation is proscribable. In general, "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Rosenblatt v. Baer,* 383 U.S. 75, 86, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). But, because "[c]riticism of government is at the very center of the constitutionally protected area of free discussion," *id.,* 383 U.S. at 85, 86 S.Ct. 669, defamation against public officials is accorded less constitutional protection than defamation against private individuals. *New York Times,* 376 U.S. 254, 84 S.Ct. 710. In reaching this conclusion, the *New York Times* court recognized that "there is a strong interest in debate on public issues" and "a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues." *Id.,* 383 U.S. at 85, 86 S.Ct. 669. Further, the Court recognized "a profound national commitment to the principle that debate on public issue should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.,* 376 U.S. at 270, 84 S.Ct. 710. Moreover, the Court also reasoned "[t]hat erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive[.]'" *Id.,* 376 U.S. at 271–72, 84 S.Ct. 710.

Courts have consistently treated peace officers as public officials under *New York Times. Hamilton,* 107 F.Supp.2d at 1245 (citations omitted). Nevertheless, defendant argues that peace officers are distinguishable from other public officials, and therefore deserve different treatment when it comes to defamation. In particular, defendant refers the court to Chapter 289 of the Nevada Revised Statutes, which defines the powers and duties of peace officers. Defendant argues that other public officials are defined in much less detail, under Chapters 281 to 288 of the Nevada Revised Statutes. Further, defendant points out that Nevada law provides other special protections for peace officers because of the nature of their positions. For example, assault or battery against a peace officer is a gross misdemeanor, while assault or battery against another person is a misdemeanor. NRS 200.471(2)(c); NRS 200.481(2)(d). Additionally, murder of a peace officer is an aggravating factor justifying imposition of the death penalty.[6] NRS 200.033(7).

Thus, defendant argues that peace officers should be treated differently from other public officials for the following reasons. First, because of their positions, peace officers are sometimes subject to violence and sometimes lose their lives in doing their jobs. Second, allegations of official misconduct lower public confidence in peace officers, thereby increasing the potential for violence. Third, allegations of official misconduct damage the working relationship which law enforcement must have with the community it serves.

---

6. Defendant also argues that peace officers are statutorily exempt from laws concerning carrying a concealed weapon and laws governing possession of a firearm by an ex-felon under NRS 202.365(1)(a), Applicability of NRS 202.350 and 202.360. However, that statute was repealed by Acts 1997, ch. 229, § 5, effective October 1, 1997.

While all of these reasons justify treating peace officers differently as regards the statutes concerning assault, battery, and murder, none of these reasons sufficiently justifies treating peace officers differently as regards false allegations of misconduct. Defendant has made no showing that there is a serious problem of false allegations of police misconduct leading to violence against police officers. Nor do any of these reasons consist entirely of the reason that defamation is proscribable. Therefore, the statute cannot stand on this ground.

### 2. Whether the content-defined subclass of proscribable speech is associated with particular secondary effects of the speech

The second ground for regulating proscribable speech is that the regulation is justified without reference to the content of the speech because the content-defined subclass is associated with particular "secondary effects" of the speech. *R.A.V.*, 505 U.S. at 389, 112 S.Ct. 2538. An example given by the *R.A.V.* court is that a state can permit all obscene live performances except those involving minors. 505 U.S. at 389, 112 S.Ct. 2538. The court does not take any of defendant's arguments to mean that the statute is justified because it is associated with particular "secondary effects" of the speech at issue here. Further, the court can think of no legitimate secondary effects to justify the content-based distinction here. Therefore, the speech cannot be regulated on this ground.

### 3. Whether there is a realistic probability that official suppression of ideas is afoot

The third ground for regulating proscribable speech is that there is no realistic probability that official suppression of ideas is afoot. *R.A.V.*, 505 U.S. at 390, 112 S.Ct. 2538. *R.A.V.'s* example for this exception is: "We cannot think of any First Amendment interest that would stand in the way of a State's prohibiting only those obscene motion pictures with blue-eyed actresses." 505 U.S. at 390, 112 S.Ct. 2538. Defendant argues that because the statute requires that the speaker *know* the statement is false, and whether the statement is false is not merely a subjective determination, the statute is not a vehicle for official suppression of ideas. However, it is nonetheless realistic to conclude that the statute might have the effect of deterring legitimate complaints against peace officers. Further, in accord with the *Hamilton* court, this court concludes that NRS 199.325 is not analogous to the Supreme Court's blue-eyed actress example because the statute is a direct restriction on speech. 107 F.Supp.2d at 1247. Therefore, this exception does not serve as a basis for regulating the speech at issue here.

### 4. Whether NRS 199.325 is narrowly tailored to serve compelling state interests

"The 'danger of censorship' presented by a facially content-based statute requires that that weapon be employed only where it is '*necessary* to serve the asserted [compelling] interest.'" *R.A.V.*, 505 U.S. at 395, 112 S.Ct. 2538. "The existence of adequate content-neutral alternatives thus 'undercut[s] significantly' any defense of such a statute[.]" *Id.*

The compelling interest set forth by defendant is protecting peace officers from damaged reputations and decreased public confidence when false allegations of official misconduct are filed. Further, while defendant recognizes the importance of reporting police misconduct, defendant argues that without a statute imposing a penalty for making a false report of police misconduct, there is nothing to prevent

individuals from "sullying police reputations for sport."

Plaintiffs counter that there is no compelling state interest in prosecuting individuals who make false complaints of misconduct against police officers versus prosecuting individuals who make false complaints of misconduct against other public officials. Rather, plaintiffs argue that public discourse on police conduct is necessary and in fact, increases public confidence in peace officers. Indeed, as the *Hamilton* court recognized, "[d]ebate on public issues and criticism of peace officers ... is speech 'at the very center of the constitutionally protected area of free discussion.'" 107 F.Supp.2d at 1246. Further, plaintiffs counter that there is a content-neutral alternative which serves to deter individuals from filing false reports of police misconduct, that is, the Nevada perjury statutes, NRS 199.120 and 199.145. If, as the *Hamilton* court recognized, all reports of police misconduct were required to be made under oath, the possibility of perjury charges deters the filing of false reports. 107 F.Supp.2d at 1247.

Defendant also argues that the statute is narrowly drawn because spoken defamatory words are protected; it is only the filing of false allegations against a police officer that may result in criminal charges. However, in light of the content-neutral alternative raised by plaintiffs, this argument fails.

For all the foregoing reasons, the court concludes that NRS 199.325 is an impermissible content-based regulation and therefore, facially violates the First Amendment. Thus, plaintiffs' motion for summary judgment is granted and defendant's cross motion for summary judgment is denied.

### III. *Conclusion*

Accordingly, **IT IS ORDERED** that plaintiffs' motion for summary judgment (# 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's cross motion for summary judgment (# 40) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' requests for status check (# 's 59 & 60) are denied as moot.