**La France HAMILTON**

v.

**CITY OF SAN BERNARDINO, et. al.**

**No. EDCV00–107RT(RNBX).**

United States District Court,
C.D. California.

Aug. 9, 2000.

Daniel P. Tokaji, Mark D. Rosenbaum, ACLU Foundation of Southern California, Los Angeles, CA, Robert A. Seeman, Joe H. Freeman, Seeman and Freeman, Glendale, CA, for plaintiff La France Hamilton.

Joseph Arias, Christopher D. Lockwood, Lewis, D'Amato, Brisbois & Bisgaard LLP, San Bernardino, CA, James F. Penman, City Attorney, Robert L. Simmons, Jr., Senior Assistant City Attorney, San Bernardino, CA, for defendants City of San Bernardino, San Bernardino Police Officer Brennan, San Bernardino Police Officer Green.

PROCEEDINGS: ORDER DENYING DEFENDANTS' MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT.

TIMLIN, District Judge.

The Court, the Honorable Robert J. Timlin, has read and considered Defendants City of San Bernardino, San Bernardino Peace Officer Brennan, San Bernardino Peace Officer Green, San Bernardino Peace Officer Johnson, San Bernardino Peace Officer Lewis, and Does 1 through 10 ("Defendants")'s motion to dismiss portions of Plaintiff La France Hamilton ("Plaintiff")'s first amended complaint ("FAC") under Federal Rules of Civil Procedure, Rule 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim, Plaintiff's opposition, Defendants' reply, and Plaintiff's surreply. Based on such consideration, the Court concludes as follows:

## I.

### BACKGROUND[1]

On March 3, 1999, Plaintiff, an African–American man, was stopped by San Bernardino Peace Officers Brennan and Green ("the officers") while riding his bicycle. The officers, who were also riding bicycles, pulled Plaintiff off his bicycle, searched him and handcuffed him. One of the officers grabbed Plaintiff around the throat, kicked his legs out from under him, landed on top of him, and placed a knee in his chest while continuing to choke him.

Once he was released from police custody, after signing a citation for not having a bicycle license, Plaintiff went to the San

---

**1.** The following statement of facts is largely derived from the FAC. For the purposes of a motion to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all facts pled within the complaint. *See Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989).

Bernardino Police Department to lodge a citizen's complaint. The watch commander at the station gave Plaintiff a complaint form and told Plaintiff that if he knowingly filed a false complaint, he could be prosecuted under Cal.Pen.Code § 148.6 ("Section 148.6"). The watch commander also told Plaintiff that he had already talked to one of the officers out in the field who told him that Plaintiff did not have any injuries. Plaintiff displayed an injured wrist to the watch commander, and the watch commander responded that the injured wrist was the kind of injury which resulted from resisting arrest.

Plaintiff noted that the form for filing a citizen's complaint contained a printed statement informing him of the possibility of criminal prosecution under Section 148.6 if any of the statements in a complaint against the officers were false. As a result of both the written and oral threat of prosecution under Section 148.6, Plaintiff did not file a citizen's complaint against the officers for unreasonable stop, search, seizure and use of excessive force against him.

After filing the original complaint, Plaintiff was again stopped and detained in March 2000 by two other San Bernardino Peace officers for asking other people at a bicycle event whether they had city bicycle licenses. Because of the threat of possible enforcement of Section 148.6 against him, Plaintiff has not filed a citizen's complaint against these officers based on this incident.

Plaintiff initiated this lawsuit in the United States District Court for the Central District of California—Eastern Division, seeking damages for alleged violations of his civil rights as well as injunctive and declaratory relief. Plaintiff subsequently filed an FAC. In the fourth claim and portions of the fifth claim of the FAC, Plaintiff alleges that Section 148.6 which makes it a misdemeanor to knowingly file a false allegation of misconduct against a peace officer is facially unconstitutional in violation of the First and Fourteenth Amendments to the United States Consti-

tution. Defendants move to dismiss such allegations under Rule 12(b)(6).

## II.

### ANALYSIS

#### A. Standard for Motion

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). A cause of action will be dismissed only where there is either "a lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

#### B. Constitutionality of Section 148.6

■■■ "The First Amendment generally prevents government from proscribing speech ..., or even expressive conduct ..., because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992) (internal citations omitted). "Content-based regulations are presumptively invalid." *Id.* However, certain "areas of speech can, consistently with the First Amendment, be regulated because of their constitutionally proscribable content ..." *Id.* at 383, 112 S.Ct. at 2543. Defamation is such an area of speech that may be regulated, provided the regulations meet the constitutional standards set forth in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686

(1964). *New York Times* provides that defamation of public officials can only be proscribed if the statement was made with "actual malice." *New York Times,* 376 U.S. at 279–280, 84 S.Ct. at 726.

■ The *R.A.V.* Court made clear that these categories of speech are not "entirely invisible to the Constitution." *See id.* at 383–384, 112 S.Ct. at 2543. Therefore, although the prohibition against content discrimination applies differently in the context of proscribable speech than in the area of fully protected speech, *see id.* at 387, 112 S.Ct. at 2545, there are still limits on the ability of government to regulate these categories of speech. *See id.* at 383–384, 112 S.Ct. at 2543. For example, "the government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government." *Id.* at 384, 112 S.Ct. at 2543.

■ Proscribable speech, such as defamation, may be regulated: a) "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable," *id.* at 388, 112 S.Ct. at 2545; b) if a content defined-subclass of the proscribable speech "happens to be associated with particular 'secondary effects' of the speech, so that the regulation is justified without reference to the content of the ... speech," *id.* at 389, 112 S.Ct. at 2546; or c) if "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot," *id.* at 390, 112 S.Ct. at 2547. If the regulation of the proscribable speech is content-based and does not fall under one of the above three categories, it is subject to strict scrutiny. *See Valley Broadcasting Co. v. United States,* 107 F.3d 1328, 1330 n. 3 (9th Cir.1997) ("*R.A.V.* requires that the content-based regulation of proscribable content be subject to strict review.")

Section 148.6(a)(1) provides: "Every person who files any allegation of misconduct against any peace officer ... knowing the allegation to be false, is guilty of a misdemeanor." Section 148.6(a)(2) states:

Any law enforcement agency accepting an allegation of misconduct against a peace officer shall require the complainant to read and sign the following advisory, all in boldface type:

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATED TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.

I have read and understood the above statement.

_____

Complainant

Plaintiff alleges in his complaint that Section 148.6 is unconstitutional on its face because it treats complaints against one class of public officials, peace officers, differently from complaints against other types of public officials. Plaintiff alleges that Section 148.6 is an unconstitutional content-based restriction.

Defendants contend that Section 148.6 is a constitutionally valid law because there is no right under the First Amendment to file knowingly false complaints against peace officers. Defendants also recite numerous California statutes which provide criminal penalties for other kinds of false statements. They argue that Section 148.6 simply adds to that body of criminal conduct as another type of false statement that is subject to criminal prosecution false allegations made in complaints against peace officers.

Whether Section 148.6 is unconstitutional is an issue of first impression. Thus, in deciding its constitutionality, it is helpful to examine what other courts have determined with regards to the facial constitutionality of Section 148.6's civil counterpart, Cal.Civ.Code § 47.5 ("Section 47.5").[2]

The United States Supreme Court has stated that because they serve the same purposes, criminal and civil libel statutes should be subject to the same constraints and limitations. *See Garrison v. Louisiana*, 379 U.S. 64, 67, 85 S.Ct. 209, 212, 13 L.Ed.2d 125 (1964) ("[w]here criticism of public officials is concerned, [there is] no merit in the argument that criminal libel statutes serve interests distinct from those secured by civil libel laws, and therefore should not be subject to the same limitations.")

In *Gritchen et. al v. Collier et. al*, 73 F.Supp.2d 1148 (C.D.Cal.1999), the court concluded that Section 47.5 was a facially unconstitutional content-based restriction on speech. There, the court noted that "most publications and broadcasts arising out of official government duties or proceedings are privileged, and therefore cannot be the subject of a defamation action." *Id.* at 1150. Section 47.5 creates an exception to this general rule of privilege for false complaints against public officials and provides that peace officers can bring a defamation action against an individual who has filed a false complaint against him or her with his or her employing agency for misconduct, criminal conduct or incompetence, knowing the complaint to be false. *See* Section 47.5; *see also Gritchen*, 73 F.Supp.2d at 1150.

Likewise, Section 148.6 treats a defamatory complaint for misconduct against a peace officer, knowing the complaint to be false, differently from defamatory complaints against other public officials. Individuals who knowingly file false complaints of misconduct against peace officers can be prosecuted under Section 148.6, while individuals who knowingly make false complaints against other public officials are not subject to prosecution.

Defendants stress that other California penal code sections also provide for prosecution of those who knowingly file false complaints in other contexts. They point to Cal.Pen.Code § 148.5 ("Section 148.5"), which provides that every person who knowingly files a false report with a peace officer, district attorney, or grand jury that a felony or a misdemeanor has been committed is guilty of a misdemeanor.[3] Section 148.5, however, only covers allega-

---

2. Section 47.5, states:

Notwithstanding Section 47, a peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made with knowledge that it was false and that it was made with spite, hatred, or ill will. Knowledge that the complaint was false may be proved by a showing that the complainant had no reasonable grounds to believe the statement was true and that the complainant exhibited a reckless disregard for ascertaining the truth.

3. Section 148.5 states, in pertinent part:

(a) Every person who reports to any peace officer ..., district attorney, or deputy district attorney that a felony or misdemeanor has been committed, knowing the report to be false, is guilty of a misdemeanor.

. . . . .

(d) Every person who makes a report to a grand jury that a felony or misdemeanor has been committed, knowing the report to false, is guilty of a misdemeanor....

tions of criminal misconduct and is thus different from Section 148.6 which includes all types of false allegations of misconduct, whether criminal or civil. Further, Section 148.5 is not limited to criminal misconduct complaints about public officials, or a particular group of public officials, such as peace officers. Moreover, Section 148.6 does not, as Plaintiff notes, cover complaints about attorneys made to the State Bar, about teachers made to school boards, or about judges made to the Commission on Judicial Performance. Indeed, Section 148.5 also applies to criminal misconduct complaints against private individuals, as well as public officials. Section 148.6 does not. Thus, it appears that Section 148.6 treats persons who file false misconduct allegations against peace officers in a considerably different way than persons who file false complaints against other public officials.

The Court concludes that by Section 148.6 California is classifying certain defamatory statements made against peace officers differently than similar complaints made against all other public officials and in so doing it creates a distinction based on the content of the complaints—whether the targets of the complaints are peace officers or other public officials. *See Gritchen*, 73 F.Supp.2d at 1152.

■ Defamation is speech which the government may regulate or proscribe. *See R.A.V.*, 505 U.S. at 383, 112 S.Ct. at 2543. The Court will assume without deciding that Section 148.6 only criminalizes defamatory statements which accord with the standard set forth in *New York Times*.[4] However, as set forth in *R.A .V.*, even proscribable speech may not be regulated without limitations. Therefore, a content-based restriction as in Section 148.6, must fall within one of the three categories enumerated by the R.A.V. Court, or be subject to strict scrutiny.

### 1. Whether the Basis for the Content–Discrimination Consists of the Very Reason the Entire Class of Speech is Proscribable

Content discrimination as to proscribable speech such as defamation is permissible when it is based on the very reason the entire class of speech at issue is proscribable because it does not pose a significant danger of discrimination based on ideas or viewpoints. *See R.A.V.*, 505 U.S. at 388, 112 S.Ct. at 2545. The *R.A.V.* Court explains: "[s]uch a reason, having been adjudged neutral enough to support exclusion of the entire class of speech from First Amendment protection, is also neutral enough to form the basis of distinction within the class." *Id.* at 388, 112 S.Ct. at 2545–2546. As an illustration of this principle, the *R.A.V.* Court offered the following example: "A state might choose to prohibit only that obscenity which is the most patently offensive in its prurience— i.e., that which involves the most lascivious displays of sexual activity." *Id.* at 388, 112 S.Ct. at 2546.

### a. Basis for Criminalizing Defamation Directed at Public Officials

The underlying reasons defamation may be proscribed are twofold: 1) society's strong interest in preventing and redressing attacks upon reputation, *see Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966), and 2) "calculated falsehoods" are not expression protected by the First Amendment. *See Time, Inc. v. Firestone*, 424 U.S. 448, 472, 96 S.Ct. 958, 973, 47 L.Ed.2d 154, *citing Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964); *see also Gritchen*, 73 F.Supp.2d at 1152 ("Defamatory statements are proscribable because they are false and injurious to their targets.")

---

**4.** A public official may not recover "damages for a defamatory falsehood relating to his official duties unless he proves the statement was made with 'actual malice'—that is with knowledge that it was false or with reckless disregard or whether it was false or not." *New York Times*, 376 U.S. at 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686.

However, statements made against public officials are treated differently under the First Amendment than are statements made against private individuals relating to matters that are not of public concern. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345–346, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974). Pursuant to *New York Times*, statements made against public officials are afforded more protection in that public officials may only recover for defamation "on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Id.* at 342, 94 S.Ct. at 3008. The primary concerns motivating the *New York Times* Court to afford greater protection to statements made against public officials were as follows: 1) "a strong interest in debate on public issues," and 2) "a strong interest in the debate about those persons who are in a position significantly to influence the resolution of the issues." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966). The Court further noted that "[c]riticism of government is at the very center of the constitutionally protected area of free discussion." *Id.*

The Supreme Court declined to extend the *New York Times* privilege to defamatory statements against private individuals. *See Gertz*, 418 U.S. at 343, 94 S.Ct. at 3008–3009. The *Gertz* Court gave greater deference to the state interest in compensating injury to reputation when the victim was a private individual in part because private individuals tend to lack effective opportunities for rebutting false statements. *See id.* ("Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy.") Thus, the Court concluded, "[p]rivate individuals are more vulnerable to injury, and the state interest in protecting them is correspondingly greater." *Id.* at 344, 94 S.Ct. at 3009. Furthermore, and more significant to the Court, was the normative distinction it drew between pri-vate and public defamation plaintiffs— "public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them." *Id.* The Court explained that public officials had to accept certain necessary consequences of being involved in public affairs, including running the risk of closer public scrutiny. *See id.* at 344–345, 94 S.Ct. at 3009–3010.

Thus, the Supreme Court has been clear about the underlying reasons defamation may be proscribed and why public officials' recourse for defamation is more limited than private individuals. California's treatment of defamation regarding peace officers as distinguished from all other public officials is constitutionally acceptable under *R.A.V.* only if the content-based distinction is premised on the same reasoning as discussed above.

### b. Basis for Content Discrimination—Treating Peace Officers Differently

■ Defendants have not demonstrated how peace officers are distinguishable from other public officials on any of the grounds upon which defamation law has been formed and balanced against First Amendment concerns, such as particular vulnerability to reputational injury due to lack of access to effective means for rebuttal, the extent to which individuals have voluntarily exposed themselves to public scrutiny, and the greater First Amendment concerns relating to speech critical of government and public officials.

Courts have consistently treated peace officers as "public officials" under *New York Time. See Gomes v. Fried et al.*, 136 Cal.App.3d 924, 933, 186 Cal.Rptr. 605, 610 (1982). The reasoning of these courts is illustrative of why singling out peace officers for differential treatment relating to defamation cannot be justified on the same bases underlying defamation law. As noted in *Kahn v. Bower et al.*, 232 Cal.App.3d 1599, 284 Cal.Rptr. 244 (1991):

the touchstone for public official status is the extent to which the plaintiff's posi-

tion is likely to attract or warrant scrutiny by members of the public. Such scrutiny may follow either because of the prominence of the position in the official hierarchy, or because the duties of the position tend naturally to have a relatively large or dramatic impact on members of the public. Illustrative of the latter situation are the many cases holding that lower echelon law enforcement officers are public officials for purposes of federal constitutional privilege. *Id.* at 1611, 284 Cal.Rptr. at 251. The *Gomes* court, in concluding why peace officers have been and should be treated as public officials, determined that the duties of a patrolman "are peculiarly 'governmental' in character and highly charged with the public interest." *Gomes*, 136 Cal. App.3d at 933, 186 Cal.Rptr. at 610 (*quoting Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill.2d 257, 239 N.E.2d 837, 841 (1968)). The court continued to explain:

> It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an 'on the street level' than in the qualifications and conduct of other comparably low-ranking government employees.... The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed toward the performance of that officer cannot be constitutionally inhibited by the threat of prosecution under State libel laws.

*Id.* (*quoting Coursey*, 239 N.E.2d at 841); *see also Imig*, 70 Cal.App.3d at 56, 138 Cal.Rptr. at 544 ("We agree with plaintiff that it is distressing and demoralizing for police officers to be subjected to false accusations of brutality, but that may be one of the crosses that a police officer must bear, in light of the power and deadly force the state places in his hands.")

The analysis in the cases noted above support encouraging public discussion regarding peace officers' conduct just as much as that of other public officials, rather than discouraging public comment by criminalizing statements made against peace officers. California courts have noted the dramatic impact peace officers tend to have on the public and the great potential for social harm if power by peace officers is abused. *See Kahn*, 232 Cal. App.3d at 1611, 284 Cal.Rptr. at 251; *see also Gomes*, 136 Cal.App.3d at 933, 186 Cal.Rptr. at 610; *Imig*, 70 Cal.App.3d at 56, 138 Cal.Rptr. at 544. Debate on public issues and criticism of peace officers, just as with other public officials, is speech "at the very center of the constitutionally protected area of free discussion." *Rosenblatt*, 383 U.S. at 85, 86 S.Ct. at 675–676. Furthermore, peace officers, as other public officials, have voluntarily exposed themselves to increased risk of injury from defamatory statements. Defendants have not demonstrated that peace officers lack effective opportunities for rebutting such statements compared to other public officials. Finally, the Court agrees with the *Gritchen* court which noted, "[n]othing about the position of a peace officer is inherently tied to the policies underlying the law of defamation, as compared to the position of other government officers." *Gritchen*, 73 F.Supp.2d at 1152. Thus, the Court concludes there is nothing distinguishable regarding the position or duties of peace officers which would support treating them differently from other public officials.

Therefore, the Court concludes the basis for the content-discrimination regarding false complaints directed at peace officers does not consist of the very reason the entire category of speech is proscribable.

## 2. Secondary Effects

A content-defined subclass of proscribable speech may be regulated if it "happens to be associated with particular 'secondary effects' of the speech, so that the regulation is justified without reference to the content of the ... speech," *R.A.V.*, 505 U.S. at 389, 112 S.Ct. at 2546. Defendants do not contend Section 148.6 has a regula-

tory purpose because secondary effects are associated with this subclass of proscribable speech. Likewise, the Court cannot conceive of any legitimate secondary effects to justify this content-based distinction. Therefore, the Court concludes Section 148.6 does not result in a regulation of a subclass of proscribable speech associated with particular secondary effects of the speech.

### 3. No Realistic Possibility that Official Suppression of Ideas is Afoot

Content-based subclasses of proscribable speech may be regulated if "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot," *R.A.V.*, 505 at 390, 112 S.Ct. at 2547. The *R.A.V.* Court offers the following example of this category: "We cannot think of any First Amendment interest that would stand in the way of a State's prohibiting only those obscene motion pictures with blue-eyed actresses." This Court concludes that the content discrimination in Section 148.6 is not analogous to the blue-eyed actress example. Rather, Section 148.6 is about speech, and is a direct restriction on a certain class of complaints, which constitute speech. *See Gritchen*, 73 F.Supp.2d at 1152.

Accordingly, the Court concludes Section 148.6 cannot be justified by any of the regulatory purposes categorized by *R.A.V.*

### 4. Strict Scrutiny

■ Because Section 148.6 is content-based and does not fall within any of the categories delineated by *R.A.V.*, its facial constitutionality must be analyzed under the strict scrutiny standard. *See Valley Broadcasting Co.*, 107 F.3d at 1330 n. 3. Therefore, Section 148.6 must be "narrowly tailored to serve compelling state interests." *R.A.V.*, 505 U.S. at 395, 112 S.Ct. at 2549.

■ It is the Defendants' burden to demonstrate that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988) (citations omitted). Defendants have failed to suggest any compelling state interests served by Section 148.6 or even argue that it is narrowly tailored. However, even though Defendants have clearly failed to meet this burden, the Court will address the merits.

■ The Court cannot discern any compelling interest served by Section 148.6 providing for the prosecution of those who make false misconduct complaints against peace officers while not prosecuting those who make false complaints against other public officials. As the court stated in *Gritchen*, "[n]o showing has been made that there is a serious problem of false complaints against police." *Gritchen*, 73 F.Supp.2d at 1153.

However, even if the content discrimination in Section 148.6 does serve compelling interests, it is not narrowly tailored to serve such interests. There are a number of non-speech restrictive means by which peace officers are protected from knowingly false misconduct complaints being made against them. For example, the possibility of perjury charges deters the filing of false misconduct allegations if a peace agency requires that all such complaints presented to it against its peace officers be by declaration under penalty of perjury. Additionally, internal oversight procedures and the attendant confidentiality are available. The Court agrees with *Gritchen* in that "[i]f these protections are insufficient, California may strengthen existing safeguards or provide procedures to ensure police officers' careers are not put in jeopardy until after a complaint's truth is verified." *Gritchen*, 73 F.Supp.2d at 1153. Hence, the Court concludes that there are sufficient non-speech related means to protect peace officers from false complaints of misconduct and thus Section 148.6 is not narrowly tailored. *See, e.g., R.A.V.*, 505 U.S. at 395, 112 S.Ct. at 2550 (concluding that the existence of adequate content-neutral alternatives significantly undercuts any defense of a content-based statute).

Therefore, the Court concludes that Section 148.6 impermissibly discriminates on the basis of the content of the speech which it criminalizes and, therefore, facially violates the First Amendment and the Fourteenth Amendment's Equal Protection Clause. Accordingly, Defendants' motion to dismiss the fourth claim and paragraphs 82 through 87 of the fifth claim of the FAC will be denied.[5]

### III.

### *DISPOSITION*

IT IS ORDERED THAT: Defendants' motion to dismiss is DENIED.

---

**5.** The Court will deny the Defendants' motion to dismiss paragraphs 82 through 87 of the fifth claim of the FAC because Defendants have not provided any argument in support of this part of their motion. They merely refer to those paragraphs as being subsumed in the motion to dismiss the fourth claim based on the facial constitutionality of Section 148.6.