**La France HAMILTON, Plaintiff,**

v.

**CITY OF SAN BERNARDINO, et al., Defendants.**

**No. ED CV 00–107–RT.**

United States District Court, C.D. California, Eastern Division.

July 7, 2004.

Benjamin E. Wizner, Mark D. Rosenbaum, ACLU Foundation of Southern California, Los Angeles, CA, Joe H. Freeman,

III, Robert A. Seeman, Freeman & Associates, Burbank, CA, for Plaintiff.

Christopher D. Lockwood, Joseph Arias, Arias Lockwood & Gray, James F. Penman, Robert L. Simmons, San Bernardino City Attorneys Office, San Bernardino, CA, for Defendants.

ORDER GRANTING PLAINTIFF LA FRANCE HAMILTON'S MOTION FOR SUMMARY ADJUDICATION AS TO THE FOURTH CLAIM IN HIS SECOND AMENDED COMPLAINT

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered plaintiff La France Hamilton ("Plaintiff")'s motion for summary adjudication ("motion") pursuant to Federal Rule of Civil Procedure 56(c) ("Rule 56") as to the fourth claim in his second amended complaint ("SAC");[1] defendants City of San Bernardino ("City") and Stephen Jarvis ("Jarvis") (collectively "Defendants")' opposition; and Plaintiff's reply.[2] Based on such consideration, the court rules as follows:

## I.

### BACKGROUND

On August 9, 2000, the court issued its order ("August 9, 2000 order") denying the City's motion to dismiss as to the fourth claim in Plaintiff's first amended complaint, which alleged that Cal.Penal Code § 148.6 ("Section 148.6") violates the First

Amendment. *See Hamilton v. City of San Bernardino,* 107 F.Supp.2d 1239 (C.D.Cal. 2000). In its August 9, 2000 order, the court found that Section 148.6 is facially unconstitutional. Plaintiff subsequently filed his SAC in which he restated the fourth claim for declaratory relief alleging, that Section 148.6 violates the First Amendment.

Plaintiff thereafter filed the instant motion.[3]

## II.

### EVIDENTIARY OBJECTIONS

**A. Defendants' Evidentiary Objections to Portions of the Declaration of La France Hamilton**

Objection to line 3: *Sustained.*

Objection to line 4: *Sustained.*

**B. Defendants' Evidentiary Objections to Declarations of Mary C. Dunlap and Samuel Walker.**

Defendants object generally to the declarations of Mary C. Dunlap and Samuel Walker. Because the motion is directed to the SAC's fourth claim for declaratory relief, which alleges that Section 148.6 is facially unconstitutional, these declarations are irrelevant and the court sustains Defendants' objection.

---

1. Plaintiff requests that the court take judicial notice of certain documents containing the legislative history of Cal.Penal Code § 148.6. Because it regards this material as legal authority in its consideration of Plaintiff's motion, the court need not take judicial notice of them.

2. Defendants also submitted a request to file a surreply which the court has previously denied.

3. The court originally vacated the motion hearing date pending the Supreme Court's issuance of an opinion in *Virginia v. Black.* After the Court issued its opinion in *Black, see* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535, the court reset the hearing date and allowed further briefing limited to the issue of *Black* 's impact on *R.A.V. v. City of St. Paul,* 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). The court has considered such briefing.

## III.

### *UNCONTROVERTED MATERIAL FACTS*

The following are uncontroverted material facts supported by admissible evidence.

On March 3, 1999, Plaintiff went to the City's Police station for the purpose of filing a citizen complaint regarding his encounter with City police officers Douglas Brennan and David Green earlier that day and told Jarvis that he wished to file a complaint regarding the officers. During the meeting Jarvis gave Plaintiff a copy of a citizen complaint form, which contained the warning mandated by Section 148.6. It is the policy of the City's police department to provide a complaint form containing the warning mandated by Section 148.6 to those who seek to file a citizen complaint of police misconduct. Jarvis acted pursuant to City policy in doing so. Plaintiff left the police station without filing a complaint.

On March 7, 2000, Plaintiff had another encounter with two different City police officers, namely, defendants Bryan Johnson and Brian Lewis, but did not file a citizen complaint against those officers.

## IV.

### *ANALYSIS*

**A. Legal Standard for Summary Judgment Motions.**

Under Rule 56, a district court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions: "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (*quoting* Fed.R.Civ.P. 56(e), and *citing Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100 (9th Cir.1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). With respect to the specific facts offered by the nonmoving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.*, 809 F.2d at 630–31 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Rule 56(c) requires entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 106 S.Ct. at 2553. In order to defeat a motion for summary judgment, the plaintiff must present significant probative evidence tending to support the complaint. *See Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir.1998); *T.W. Elec. Serv.*, 809 F.2d at 630. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512,

91 L.Ed.2d 202 (1986). This court thus applies to either party's motion for summary judgment the same standard as for a motion for directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

## B. Constitutionality of Section 148.6.

■ Although some categories of speech may be proscribed by legislation due to their limited social value, those categories are not "entirely invisible to the Constitution." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 112 S.Ct. 2538, 2543, 120 L.Ed.2d 305 (1992). A governmental entity may not constitutionally proscribe a subclass of otherwise proscribable speech based on protected content elements: "Thus, the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government." *Id.* (emphasis in original).

In *R.A.V.,* the Court held that a local ordinance banning the display of a symbol " 'which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race,

color, creed, religion or gender' " was unconstitutional. *Id.* at 2541 (*quoting* City of St. Paul Bias—Motivated Crime Ordinance, St. Paul, Minn., Legis. Code § 292.02 (1990)). The fact that fighting words are constitutionally proscribable, the Court stated, did not permit the government to regulate only fighting words that arouse anger based on race, color, creed, religion, or gender. *Id.* at 2547.

The Court, however, listed three categorical exceptions in which regulation of a subclass of proscribable speech would be constitutional. First, "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable," *id.* at 2545; second, where the subclass happens to be associated with "secondary effects," of the speech so that the regulation is justified without reference to the content of the speech, or where the regulation is targeted at conduct rather than speech, *id.* at 2546; and third, when "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." *Id.* at 2547.

In its August 9, 2000 order, this court found that Section 148.6[4] regulates defa-

---

**4.** Section 148.6(a)(1) provides: "Every person who files any allegation of misconduct against any peace officer ... knowing the allegation to be false, is guilty of a misdemeanor." Section 148.6(a)(2) states:

Any law enforcement agency accepting an allegation of misconduct against a peace officer shall require the complainant to read and sign the following advisory, all in boldface type:

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT

ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATED TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.

I have read and understood the above statement.

---

Complainant

mation, a class of speech proscribable under the First Amendment. But because it prohibits only the subclass of defamation directed at peace officers, and since it does not fall into one of the three categories of permissible regulation of proscribable speech established in *R.A.V.*, Section 148.6 is subject to strict scrutiny. *Hamilton*, 107 F.Supp.2d at 1242. Under strict scrutiny, the court concluded that the statute neither serves a compelling purpose nor is it narrowly tailored to serve a legitimate governmental interest. *Id.* at 1247. The court therefore determined that Section 148.6 violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

Defendants contend in their opposition to the instant motion that the court's August 9, 2000 order misapplied the pertinent law, and that Section 148.6 is constitutional based on the California Supreme Court's decision in *People v. Stanistreet*, 29 Cal.4th 497, 127 Cal.Rptr.2d 633, 58 P.3d 465 (2002). In *Stanistreet*, the court held that Section 148.6 is a constitutional regulation of defamation because it comes within each of the three *R.A.V.* categories of permissible regulation. Plaintiff contends that this court's August 9, 2000 order correctly reasoned that Section 148.6 violates the First Amendment, and that *Stanistreet* was incorrectly decided.

■ The court disagrees with the *Stanistreet* analysis and agrees with Plaintiff that Section 148.6 does not come within the three *R.A.V.* categories of permissible content-based subclass regulation, and is facially unconstitutional in violation of the First Amendment and Equal Protection Clause of the Fourteenth Amendment.

### 1. *R.A.V. Category 1*

Under the first *R.A.V.* category, when the basis for regulating the subclass of proscribable speech is content it must consist entirely of the very reason the entire class of speech is proscribable. 112 S.Ct. at 2545. As examples, the Court stated that the government could prohibit only obscenity that is most patently offensive in its prurience, and that the government can criminalize only threats of violence directed at the President since the reason that threats of violence are constitutionally unprotected has special force when applied to the President. *R.A.V.*, 112 S.Ct. at 2546. The *Stanistreet* court in analogizing Section 148.6 to threats against the President stated that the reasons for proscribing defamation have special force when applied to law enforcement officers because, due to the City's legal obligation to investigate complaints of this conduct and retain the records of such for at least five years, false statements in the written complaints cause greater harm to law enforcement officers than to other groups of persons. *Stanistreet*, 29 Cal.4th at 508, 127 Cal.Rptr.2d at 640, 58 P.3d 465.

■ Content-based discrimination of a subclass of proscribable speech, however, cannot be based merely on greater harm. If that were the case, the ordinance in *R.A.V.* would have been constitutional since the history of racial, religious, and gender discrimination in the United States makes it more likely that fighting words can result in greater harm when they are based on race, religion, or gender.[5]

---

5. *See* U.S. Dep't of State, *Initial Report of the United States of America to the United Nations Committee on the Elimination of Racial Discrimination* 5 (September 2000) (discussing historical struggles to combat racial and ethnic discrimination in the United States and stating that "de facto segregation and persistent racial discrimination continue to exist"

in the United States), *available at* http://www.state.gov/www/global/human_rights/cerd_report/cerd_intro.html (visited April 8, 2003); see also *Virginia v. Black*, 538 U.S. 343, 123 S.Ct. 1536, 1544–46, 155 L.Ed.2d 535 (2003) (discussing targeting of African–Americans, Catholics, Jews, and immigrants by the Ku Klux Klan).

Threats to the President, *see* 18 U.S.C. § 871 (2003) ("Section 871"), are not properly analogized to false statements of misconduct against police officers. Threats of violence in general are a much more restricted and distinct category of speech than false statements. *Cf. People v. Mirmirani,* 30 Cal.3d 375, 178 Cal.Rptr. 792, 800, 636 P.2d 1130 (1981) (stating that statutes that proscribe threats "must be narrowly directed only to threats which truly pose a danger to society"). Under Section 871, a defendant can only be prosecuted for "true" threats against the President, not for mere political hyperbole. *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 1401–02, 22 L.Ed.2d 664 (1969). Furthermore, because of the President's unique and paramount role in society, threats toward the President are qualitatively different than threats against other citizens and officials. *United States v. Hanna,* 293 F.3d 1080, 1084 (9th Cir.2002). Without minimizing their social significance, California's law enforcement officers do not occupy the same exclusive and unparalleled executive position as the President of the United States. *See generally* U.S. Const. art. II.

■ As this court discussed in its August 9, 2000 order, the reasons for proscribing defamation against public officials—society's interest in protecting reputation, and discouraging dissemination of falsehoods—do not permit a distinction in the treatment of false statements based on the fact that the statements concern law enforcement officers. *Hamilton,* 107 F.Supp.2d at 1245–46; *see also Eakins v. State of Nevada,* 219 F.Supp.2d 1113, 1120 (D.Nev.2002). In fact, the reasons for prohibiting defamation are less pronounced when the defamatory statements are directed to public officials. Public officials are generally entitled to less protection from defamatory statements since they hold positions of

prominence and can more effectively rebut negative statements directed towards them. *See Gertz v. Welch,* 418 U.S. 323, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974) (stating that because private individuals do not have access to the resources to combat false statements available to public officials, the state has a greater interest in protecting private individuals from defamation).

There is a particularly pronounced constitutional interest in protecting speech critical of law enforcement. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398 (1987). The freedom to speak out against police action "is one important characteristic by which we distinguish ourselves from a police state." *Duran v. City of Douglas,* 904 F.2d 1372, 1378 (9th Cir. 1990). Courts should be especially wary of laws that attempt to curb speech concerning police misconduct in light of its protected status. *See United States v. Poocha,* 259 F.3d 1077, 1082 (9th Cir.2001) ("Criticism of the police, profane or otherwise, is not a crime."); *Mackinney v. Nielsen,* 69 F.3d 1002, 1007 (9th Cir.1995) (holding that the First Amendment protects verbal challenges to the police).

Section 148.6, then, does not come within *R.A.V.*'s first category of permissible content-based subclass prohibition of defamation.

### 2. *R.A.V. Category 2*

The *Stanistreet* court opined that Section 148.6 is constitutionally justified on the basis that substantial "secondary effects" associated with false statements are a waste of City resources used in investigating the complaint, and a false complaint can unjustly damage an officer's reputa-

tion. 29 Cal.4th at 509, 127 Cal.Rptr.2d at 640, 58 P.3d 465.

■ The "secondary effects" doctrine, however, does not sweep so broadly. The Supreme Court has applied the "secondary effects" doctrine to permit municipal zoning of adult theaters. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Yet, a key step in the *Renton* analysis was the Court's determination that the ordinance did not ban adult theaters altogether but merely circumscribed them. *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 1733, 152 L.Ed.2d 670 (2002). A city may not regulate the "secondary effects" of speech by suppressing the speech itself. *Id.* at 1739 (Kennedy, J., concurring). A content-based fee or tax, for instance, cannot be justified by reference to "secondary effects." *Id.* Section 148.6, by imposing a criminal sanction on speech with a particular content, is far stricter than even fees or taxes. Section 148.6 thus exceeds the extent of permissible speech regulation under the "secondary effects" doctrine.

Furthermore, the Court has refused to permit governmental suppression of speech critical of particular groups on the basis of "secondary effects." In *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), the Court rejected the government's attempted "secondary effects" argument in support of a statute prohibiting the display of signs containing disparaging speech directed at a foreign country within 500 feet of that country's embassy. The Court clarified that the "secondary effects" doctrine was merely a variation of its content-neutral analysis. *Id.* at 1163. A statute that focuses on the direct impact of speech and is justified only by reference to the content of speech, the Court stated, oversteps the "secondary effects" doctrine. *Id.* at 1163–64. The California Supreme Court has relied on *Boos* in stating that the harmful effects of racial epithets on plaintiffs do not qualify as "secondary effects." *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal.4th at 135, 87 Cal.Rptr.2d 132, 142 n. 4 (1999).

Here, even if the legislature was partly motivated by the desire to curb the harmful effects of wasted investigative resources and damage to officers' reputation, as stated by the *Stanistreet* court, these motives focus on the direct impact of the speech, not its "secondary" effects. Section 148.6 is expressly intended to preclude false statements directed at police officers. It focuses upon false complaints against police officers, the subclass of speech it seeks to prevent and is justified only by reference to the content of the speech. Therefore, the "secondary effects" doctrine as *expressed* under *Boos,* and as applied to Section 148.6 does not satisfy *R.A.V.*'s second category.

### 3. *R.A.V.* Category 3

The *Stanistreet* court determined that the third *R.A.V.* category—there be "no realistic possibility that official suppression of ideas is afoot"—also applies to Section 148.6 by conclusively stating that because complaints against the police are favored speech [6] and Section 148.6 targets only knowingly false statements, the legislature did not intend to suppress speech. 29

**6.** While the court agrees with *Stanistreet* that reports of police misconduct enhance social welfare, complaints against police are certainly not universally "favored," and there is nothing in Section 148.6 or its legislative history indicating encouragement for complaints against police. Indeed, the legislative intent in passing Section 148.6 was to curb the increased number of civilian complaints against officers stemming from the Rodney King incident in March 1991. Assembly Committee on Public Safety, Analysis of AB 11732, at 1–2 (Feb. 24, 1995).

Cal.4th at 509–11, 127 Cal.Rptr.2d 633, 58 P.3d 465. The third *R.A.V.* category, however, does not involve an inquiry as to whether there *is* official suppression of ideas—the answer to which would rarely be apparent—but merely whether it is *realistically possible* that the government is suppressing speech. Given that it expressly targets speech critical of peace officers, it is realistically possible that Section 148.6 was intended to suppress speech. Section 148.6's legislative history, in fact, recognizes that Section 148.6's intended effect is to reduce complaints against peace officers.

In addition to its criminal sanction, Section 148.6 functions to suppress speech by mandating that an individual wishing to register a complaint against a police officer first receive the sobering forewarning that she or he can be criminally prosecuted for making a knowingly false complaint against an officer, and requiring that a complainant sign this admonition before submitting her or his complaint. There is a high likelihood that Section 148.6's warning will cause individuals to refrain from filing a complaint against law enforcement officers.

Overall, Section 148.6 creates a potent disincentive for citizens to file a complaint. A potential complainant faces the significant risk of criminal prosecution coupled with the minimal individual benefit of lodging a complaint against a police officer. Unless there is a strong likelihood of experiencing future abuse from that same officer, a civilian individual will gain little, aside from the satisfaction of fulfilling her civic duty, by submitting a complaint against a police officer. On the other hand, by submitting a complaint, that individual subjects herself to the possibility of being found criminally liable at worst, or, at best, having to expend significant amount of money and time in successfully defending herself against a charge of vio-

lating Section 148.6. Balancing the benefits against the risks an individual with a completely legitimate complaint could rationally choose not to submit her complaint. *See Stanistreet,* 29 Cal.4th at 513–15, 127 Cal.Rptr.2d at 644–45 (Werdegar, J., concurring).

The court concludes that there is a realistic possibility that California is suppressing speech through Section 148.6 and Section 148.6 does not come within *R.A.V.'s* third category.

### 4. *Viewpoint Discrimination*

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 2545, 105 L.Ed.2d 342 (1989). Viewpoint discrimination involves an intent "to discourage one viewpoint and advance another." *United States v. Kokinda,* 497 U.S. 720, 110 S.Ct. 3115, 3124, 111 L.Ed.2d 571 (1990). Viewpoint discrimination is especially constitutionally offensive and requires greater scrutiny than other methods of speech regulation. *R.A.V.,* 112 S.Ct. at 2568–69 (Stevens, J., concurring).

In addition to being content-based, Section 148.6 discriminates based on viewpoint. A citizen is prohibited from making a false statement concerning a law enforcement officer only if the citizen is complaining about the behavior of the peace officer. Section 148.6 contains no similar prohibition on making such written false statements when the citizen is not submitting a complaint. Thus, a citizen, for the purpose of furthering an officer's career or based on some other motive, could disingenuously commend a peace officer under Section 148.6, knowing full well that her commendation was based on false facts, without incurring criminal liability. This viewpoint

bias subjects Section 148.6 to a more enhanced judicial scrutiny, which it cannot survive.

Therefore, despite the California Supreme Court's contrary view in *Stanistreet*, the court concludes as a matter of law for the reasons stated above and earlier stated in *Hamilton v. City of San Bernardino*, 107 F.Supp.2d 1239 (C.D.Cal. 2000) that Section 148.6 is facially unconstitutional. The court will grant Plaintiff's motion for summary adjudication as to the SAC's fourth claim.

## V.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT:

1) Plaintiff's motion for summary adjudication as to the SAC's fourth claim for declaratory relief asserting that Section 148.6 is facially unconstitutional is GRANTED;

2) Section 148.6 is declared UNCONSTITUTIONAL on its face; and

3) a Permanent Injunction as sought in the fourth prayer of the SAC be entered.