**Sam DEHNE, et al., Plaintiffs,**

v.

**Skip AVANINO, in his official capacity as Chairman of the Nevada Commission on Ethics, Mario Recanzone, in his official capacity as Vice–Chair of the Commission on Ethics, Joni Wines, in her official capacity as a member of the Commission on Ethics, Peter Bernhard, in his official capacity as a member of the Commission on Ethics, Bill Flangas in his official capacity as a member of the Commis-**

sion on Ethics, Todd Russell in his official capacity as a member of the Commission on Ethics, R. Hal Smith in his official capacity as a member of the Commission on Ethics, Defendants.

No. CV–N–99–642–DWH(VPC).

United States District Court, D. Nevada.

Sept. 19, 2001.

Jeffrey A. Dickerson, Reno, NV, Allen Lichtenstein, Las Vegas, NV, for Plaintiff.

Nancy Lee Varnum, Commission Counsel, Nevada Commission on Ethics, Carson City, NV, for Defendants.

## ORDER

HAGEN, District Judge.

Before the court is defendants' motion for judgment on the pleadings or, in the alternative, motion for summary judgment (# 36). Plaintiffs filed papers in opposition to defendants' motion (# 38) and filed a counter-motion for partial summary judgment (# 39).[1] Defendants replied in support of their motion (# 40) and filed an opposition to plaintiffs' cross-motion for partial summary judgment (# 41). Plaintiffs replied in support of their cross-motion for partial summary judgment (# 44). The above captioned civil action was referred to the Honorable Valerie P. Cooke, United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). The Magistrate Judge reviewed the submissions and held oral argument on May 23, 2001. The Magistrate Judge then filed her Report and Recommendation (# 47) on August 6, 2001, recommending that the court grant plaintiffs' summary judgment motion and deny defendants' motion for judgment on the pleadings and alternative motion for summary judgment. The defendant filed objections to the Report and Recommendation (# 49).

The court has performed a *de novo* review of those portions of the Report and Recommendation as to which objections were made. *See* 28 U.S.C. § 636(b)(1). Having thoroughly considered the entire case and all relevant law, the court hereby sustains the defendants' objections as to the Magistrate Judge's finding that N.R.S. § 281.551(2)(a) is overbroad, the Magistrate Judge's conclusion that the statutes are unconstitutional "as applied" to plaintiff, and the Magistrate Judge's misidentification of "N.R.S. § 281.551(2)(a)" as

---

1. While plaintiffs' motion is titled as one for partial summary judgment, the text of the motion and reply state plaintiffs seek summary judgment, not partial summary judg-

ment. Therefore, the court construes plaintiffs' motion (# 39) as one for full summary judgment.

"N.R.S. § 281.511(2)(a)" on pages 2 and 3 for the reasons stated below. The court adopts the remainder of the Magistrate Judge's Report and Recommendation. Accordingly, the court finds that N.R.S. §§ 281.525(1) and 281.551(2)(a) violate the First and Fourteenth Amendments to the United States Constitution and grants plaintiff's summary judgment motion (# 39) and denies defendant's motion for judgment on the pleadings or alternative motion for summary judgment (# 36).

## I. *Factual Background*

On or about March 26, 1999, plaintiff Dehne wrote a letter to the Nevada Commission on Ethics ("Commission") expressing his concern that Reno Mayor Jeff Griffin had possibly violate previous Commission ruling and possibly engaged in a conflict of interest through Mayor Griffin's alleged interaction with Krys Bart, Executive Director of the Airport Authority of Washoe County. Around the same time, plaintiff Dehne wrote a similar letter to the Commission concerning Krys Bart.

The Commission assumed jurisdiction over plaintiff's letters and treated them as requests for opinions pursuant to N.R.S. § 281.511. On June 10, 1999, the Commission held a hearing in closed session. Testimony was received from plaintiff Dehne, Mayor Griffin, Krys Bart, and others. Based on the testimony and evidence before it, the Commission determined that just and sufficient cause did not exist to proceed with the matter. Accordingly, it dismissed the matter against Mayor Griffin and Ms. Bart.

The Commission found that plaintiff Dehne's letters contained false information and were submitted in violation of N.R.S. §§ 281.525 and 281.551(2). As a result of these findings and pursuant to N.R.S. § 281.551(2)(a), the Commission imposed a civil penalty of $5,000. Additionally, if the Commission determines that a person has violated N.R.S. § 281.525(1), it is required to inform the attorney general or the district attorney. *See* N.R.S. § 281.525(3) ("The commission shall inform the attorney general or the district attorney of any case involving a violation of subsection 1."). The Commission indicated that it would inform the Washoe County District Attorney of Dehne's violation of N.R.S. § 281.525 so that the District Attorney could decide whether to proceed against Dehne under N.R.S. § 281.525 or any other applicable criminal statute.

Nevada Revised Statute § 281.525(1) provides:

> It is unlawful for any person to make, use, publish or disseminate any statement which is known or through the exercise of reasonable care should be known to be false, deceptive or misleading in order to induce the commission to render an opinion or to take any action related to the rendering of an opinion.

A person who violates N.R.S. § 281.525(1) is guilty of a misdemeanor. *See* N.R.S. § 281.525(2). As indicated above, the Commission determined that Dehne violated N.R.S. § 281.551(2) and imposed a $5,000 fine against him.

Nevada Revised Statute § 281.551(2)(a) states:

> In addition to other penalties provided by law, the commission may impose a civil penalty not to exceed $5,000 and assess an amount equal to the amount of attorney's fees and costs actually and reasonably incurred by the person about whom an opinion was requested pursuant to NRS 281.511, against a person who:
>
>> (a) Submits to the commission, in bad faith or with a vexatious purpose, an accusation or information that is false
>>
>> . . . .

Plaintiff filed this suit against defendants on November 30, 1999. Plaintiffs'

complaint (# 1) originally consisted of five claims; however, on August 29, 2000, the District Court entered an order (# 25) granting in part the Commission's motion to dismiss counts three through five. The court also granted defendants' motion as to counts one and two to the extent they requested an order striking the fine imposed against the plaintiff by the Commission. In the remaining counts one and two of the complaint, plaintiffs seek an order from the court declaring N.R.S. §§ 281.525(1) and 281.551(2) unconstitutional because they violate the First and Fourteenth Amendments of the United States Constitution. Plaintiffs also request a preliminary and permanent injunction enjoining enforcement of the statutes.

## II. *Analysis*

### A. Magistrate Judge's finding that N.R.S. §§ 281.525(1) & 281.551(2)(a) are facially unconstitutional.

In her report, the Magistrate Judge concluded that N.R.S. §§ 281.525(1) and 281.551(2)(a) did not comport with the standards set out in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and violated the doctrines of vagueness and overbreadth. (*See* Report and Recommendation (# 47) at 5–12.) As noted above, the court adopts the Magistrate Judge's conclusions that the statutes violate the *New York Times* standards and the vagueness doctrine and that N.R.S. § 281.525(1) is overbroad. However, after reviewing N.R.S. § 281.551(2)(a), the court rejects the finding that the statute is overbroad.

▅▅▅ A statute may be overbroad "if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In her report, the Magistrate concluded that N.R.S. § 281.551(2)(a) was overbroad because "[e]ven if the allegations of the complaint are true, a citizen may nevertheless be

charged with a misdemeanor or a fine of up to $5,000.00 because the Commission finds the complaint was lodged in bad faith or for a vexatious purpose." (Report & Recommendation (# 47) at 12.) However, in reading the statute, this court concludes that N.R.S. § 281.551(2)(a) requires that the statement be: (1) an accusation or information; (2) made in bad faith or with a vexatious purpose; and (3) false. Accordingly, the court sustains defendants' objection as to the finding of N.R.S. § 281.551(2)(a) as overbroad but adopts the remainder of the report and recommendation pertaining to the facial unconstitutionality of the statutes.

### B. Magistrate's conclusion that N.R.S. §§ 281.525(1) & 281.551(2)(a) are unconstitutional "as applied" to plaintiff.

On page 14 of her report and recommendation, the Magistrate Judge concludes "Nevada Revised Statutes §§ 281.525(1) and 281.551(2)(a) are unconstitutional both on their face and as applied to plaintiff Dehne." (*See* Report and Recommendation (# 47) at 14.)

▅▅▅ Facial and as applied arguments are two separate bases for challenging the constitutionality of a statute, and the litigant must specify whether they wish to challenge the statute on either or both of these grounds. There are two ways an ordinance may be argued as facially unconstitutional: (1) as unconstitutional in every conceivable application, or (2) as unconstitutionally overbroad. A finding that a statute is facially unconstitutional results in invalidation of the law itself. *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir.1998) In contrast to a facial challenge, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of

valid application to others." *Id.* If the litigant is successful in their challenge, the law itself is not struck but only the particular application of the law in the litigant's case. *Id.*

■ In this court's order of August 29, 2000 the court dismissed all of ·plaintiff's claims except for the claims that the statutes were facially unconstitutional under the First and Fourteenth Amendments. (*See* Dismissal Order (# 25) at 9.) Accordingly, the only claims remaining after the court's dismissal order involve facial challenges to the statutes. (*See Id.* and Verified Complaint, counts 1 & 2(# 1) at 5–7.) Thus, the court sustains the defendants' objection to the Magistrate Judge's finding of the statutes unconstitutional as applied to plaintiff.

**C. The Magistrate Judge's misidentification of "N.R.S. § 281.551(2)(a)" as "N.R.S. § 281.511(2)(a)".**

Since plaintiffs only challenged N.R.S. §§ 281.525(1) and 281.551(2), the reference to N.R.S. § 281.511(2)(a) in the report and recommendation on pages 2 and 3 are minor typographical errors. Accordingly, defendant's objection to the misidentification is sustained.

### III. *Conclusion*

Accordingly, **IT IS ORDERED** that a judgment be entered that N.R.S. §§ 281.525(1) and 281.551(2)(a) violate the First and Fourteenth Amendments of the United States Constitution and that permanent injunctions be issued enjoining these statutes from enforcement.

**IT IS FURTHER ORDERED** that plaintiffs' motion (# 39) is GRANTED. The clerk shall enter ·judgment accordingly.

**IT IS FURTHER ORDERED** that defendants' motion (# 36) is DENIED.

### *REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE*

COOKE, United States Magistrate Judge.

This Report and Recommendation is made to the Honorable David W. Hagen, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1–4. Before the court is defendants' motion for judgment on the pleadings or, in the alternative, motion for summary judgment (# 36) ("defendants' motion for summary judgment"). Plaintiffs filed papers in opposition (# 38) and filed a counter-motion for partial summary judgment (# 39) ("plaintiffs' cross-motion for summary judgment").[1] Defendants replied in support of their motion (# 40) and filed an opposition to plaintiffs' cross-motion for partial summary judgment (# 41). Plaintiffs replied in support of their cross-motion for partial summary judgment (# 44). The court reviewed the submissions and held oral argument on May 23, 2001. For the reasons stated below, the undersigned magistrate judge recommends that the District Court rule that plaintiffs are entitled to· summary judgment, and that the defendants are not entitled to summary judgment or judgment on the pleadings.

### I. *Factual Background*

On or about March 26, 1999, plaintiff, Sam Dehne ("plaintiff Dehne"), wrote a letter to the Nevada Commission on Ethics ("Commission") concerning the conduct of

---

1. Although the title of plaintiffs' motion is styled as one for partial summary judgment, the text of the motion and reply states that plaintiffs seek summary judgment, not partial summary judgment. Therefore, the court construes plaintiffs' motion (# 39) as one for full summary judgment.

Reno Mayor Jeff Griffin. Plaintiff Dehne's letter to the Commission expressed concern that Mayor Griffin had possibly engaged in a conflict of interest through Mayor Griffin's alleged interaction with Krys Bart ("Ms.Bart"), Executive Director of the Airport Authority of Washoe County, and that Mayor Griffin had possibly violated a previous Commission ruling. At about this same time, plaintiff wrote a similar letter to the Commission concerning Ms. Bart.

Pursuant to Nev.Rev.Stat. ("N.R.S.") § 281.511, the Commission assumed jurisdiction over plaintiff Dehne's letters and treated them as requests for opinions from the Commission. The Commission held a closed hearing on June 10, 1999, and the Commission received testimony from plaintiff Dehne, Mayor Griffin, Ms. Bart, and others. Based on the evidence and testimony before it, the Commission decided that just and sufficient cause did not exist to proceed and dismissed the matter against Mayor Griffin and Ms. Bart.

The Commission found that plaintiff Dehne's letters contained false information and were submitted in violation of N.R.S. §§ 281.525(1) and 281.511(2)(a). Based upon these findings, the Commission imposed a civil penalty against plaintiff Dehne of $5,000 for violating N.R.S. § 281.511(2)(a). The Commission also indicated that it would inform the Washoe County District Attorney's Office of plaintiff Dehne's violation of N.R.S. § 281.525 pursuant to N.R.S. § 281.525(3).

Nevada Revised Statutes § 281.525 provides:

1. It is unlawful for any person to make, use, publish or disseminate any statement which is known or through the exercise of reasonable care should be known to be false, deceptive or mis-

leading in order to induce the commission to render an opinion or to take any action related to the rendering of an opinion.

2. Any person who knowingly violates the provisions of subsection 1 is guilty of a misdemeanor.

3. The commission shall inform the attorney general or the district attorney of any case involving a violation of subsection 1.

Nevada Revised Statutes § 281.551(2)(a) states:

2. In addition to other penalties provided by law, the commission may impose a civil penalty not to exceed $5,000 and assess an amount equal to the amount of attorney's fees and costs actually and reasonably incurred by the person about whom an opinion was requested pursuant to NRS 281.511, against a person who:

(a) Submits to the commission, in bad faith or with a vexatious purpose, an accusation or information that is false;

. . .

Plaintiffs' complaint (# 1) originally consisted of five counts; however, on August 29, 2000, the District Court entered an order (# 25) granting in part the Commission's motion to dismiss counts three through five. The Court denied defendants' motion as to counts one and two to the extent they requested declaratory and prospective injunctive relief, since the Commission may apply N.R.S. §§ 281.511 and 281.525 in the future.[2]

In their first claim for relief, plaintiffs seek an order from the court declaring N.R.S. §§ 281.525(2) and 281.551(2)(a) unconstitutional and for injunctive relief because they violate the First Amendment of

**2.** The Court granted the Commission's motion in part as to counts one and two only to the extent plaintiffs sought an order from the Court striking the fine imposed against plaintiff by the Commission.

the United States Constitution. Plaintiffs challenge these statutes as facially unconstitutional and overbroad in that they prohibit speech on matters of public concern, namely the alleged misconduct of public officials. In the second claim for relief, plaintiffs contend that these statutes are facially unconstitutional and infringe on fundamental Fourteenth Amendment rights because they provide no notice or opportunity to be heard before the Commission may impose a fine of up to $5,000.00 against citizens who are found in violation of N.R.S. § 281.525(1), as the Commission did against plaintiff Dehne. Plaintiffs seek an order declaring N.R.S. §§ 281.525(1) and 281.551(2) unconstitutional and for permanent injunctive relief.

## II. *Analysis*

### A. **Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party. *See Zoslaw v. MCA Distr. Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). For this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Baker v. Centennial Ins. Co.,* 970 F.2d 660, 662 (9th Cir.1992). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]here is no genuine issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Products v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

The parties agree that the only issues for the court's consideration are whether N.R.S. §§ 281.525(1) and 281.551(2)(a) facially violate the First and Fourteenth Amendments. *See* Plaintiffs' cross-motion for summary judgment at p. 4(# 39); defendants' opposition to plaintiff's cross-motion for summary judgment at p. 2(# 41). Therefore, any issue of fact as to the na-

ture of plaintiffs' particular activities is immaterial and is not an obstacle to the granting of summary judgment. *See, e.g., Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 627, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980).

### B. Facial Challenge

■ Plaintiffs raise a facial challenge to these statutes, which regulate statements made to the Commission about a public official for alleged ethical violations and which authorize the Commission to impose monetary penalties against citizens who violate the statutes. "Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/ PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citing *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 and n. 15, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Litigants also have standing in First Amendment overbreadth cases to "challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), *accord, Perry v. Los Angeles Police Dept.,* 121 F.3d 1365, 1368 (9th Cir.1997), *cert. denied,* 523 U.S. 1047, 118 S.Ct. 1362, 140 L.Ed.2d 511 (1998). This occurs "because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute." *Village of Schaumburg,* 444 U.S. at 634, 100 S.Ct. 826. The court finds that plaintiffs' claims are grounded on the First Amendment, and they may argue the impact of the statutes on their own expressive activities, as well as those of others. *Schad v. Borough of Mount Ephraim,* 452

U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Thus, plaintiffs have standing to bring a facial challenge to these statutes.

### C. Level of Scrutiny

■ "The First Amendment generally prevents the government from proscribing speech ... because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul, Minnesota,* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (citations omitted). Content-based laws are presumptively invalid. *Id.* (citing *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 115, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991)). Therefore, the initial inquiry must be whether the statute regulating the speech is content-neutral; that is, whether the state can justify it without reference either to the content of the speech it restricts or to the direct effect of that speech on listeners. *Ward v. Rock Against Racism,* 491 U.S. 781, 791–92, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *see also Lind v. Grimmer,* 30 F.3d 1115 (9th Cir.1994), *cert. denied, Wang v. Lind,* 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995).

■ The Commission is generally charged with oversight of the ethical conduct of public officials in the State of Nevada. N.R.S. § 281.471. This includes reviewing and investigating requests for opinions made by citizens to the Commission regarding allegations that a public official has breached the code of ethical standards established by N.R.S. § 281.481. *See generally* N.R.S. §§ 281.465 and 281.511. The purposes of N.R.S. §§ 281.525(1) and 281.551(2)(a) are to "regulate against false statements of fact" and to "prohibit [the making of] false statements in the context of petitioning the commission for redress against a public official." Defendants' motion for summary judgment at p. 7, lines 14–15(# 36); defen-

dants' reply in support of motion for summary judgment at p. 5, lines 23–24 (#s 40–41).

In *Lind v. Grimmer*, 30 F.3d 1115 (9th Cir.1994), *cert. denied, Wang v. Lind*, 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995), the court considered the content-neutrality of a Hawaii statute regulating speech concerning alleged campaign spending violations in light of the purposes of the statute, which included preventing candidates and their supporters from being " 'unduly tarred by a vindictive complaint,' " and "to prevent the Commission's credibility from being invoked to support 'scandalous charges.' " *Id.* at 1117–18. The court said:

> Because these concerns all stem from the direct communicative impact of speech, we conclude that section 11–216(d) regulates speech on the basis of its content. Moreover, the speech it restricts, speech about political processes and governmental investigations of wrongdoing by public officials, falls near to the core of the First Amendment. *See New York Times v. Sullivan*, 376 U.S. 254, 270–71, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964). Therefore, the statute is presumptively unconstitutional. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 381–82, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992). It will survive scrutiny only if it is narrowly drawn and is necessary to serve a compelling state interest, *Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988), or if the speech it regulates otherwise is undeserving of full protection, *see, e.g., R.A.V.*, 505 U.S. at 383, 112 S.Ct. at 2543 (listing categories); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (devaluing information acquired through civil discovery).

*Id.* at 1118. This court finds *Lind v. Grimmer* compelling. As with the Hawaii statute, the Nevada statutes seek to regulate speech that is not content-neutral because the asserted purposes for these statutes stem from the "direct communicative impact of speech." *Id.* These statutes are designed to prohibit speech based upon its content and its effect upon listeners. Like the Hawaii statute, the Nevada statutes regulate speech about allegations of wrongdoing of public officials, which, indeed, "falls near to the core of the First Amendment." The court must now decide whether N.R.S. §§ 281.525(1) and 281.551(2)(a) are narrowly drawn and necessary to serve a compelling state interest, or whether the speech being regulated is unprotected speech.

**1. Whether the speech proscribed by N.R.S. §§ 281.525(1) and 281.551(2)(a) is protected under the First Amendment**

██ The Commission contends that the speech these statutes regulate is not protected speech because N.R.S. § 281.525(1) prohibits the making of false, deceptive, or misleading statements to induce the Commission to take action against a public official, and N.R.S. § 281.551(2)(a) prohibits citizens from submitting to the Commission "in bad faith or with a vexatious purpose, an accusation or information that is false." Unlike truthful statements, false statements of fact do not enjoy First Amendment protection, since "there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). However, although false statements may be deemed unprotected speech in some instances, this general constitutional maxim does not apply to statements made about the conduct of public officials. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In *New York Times*, the United States Supreme Court held

that even false statements made about public officials are protected unless it can be shown that the statements were made "with 'actual malice'—that is, with knowledge that it was false or with reckless disregard that it was false or not." *Id.* at 279–80, 84 S.Ct. 710.

The *New York Times* standard for criticism of public officials stems from "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270–71, 84 S.Ct. 710 (citations omitted). The Court analogized the conditional privilege of criticism of official conduct with the protection afforded a public official when he or she is sued for libel by a private citizen and noted that in *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Court held statements of federal officials to be absolutely privileged if made within the scope of his or her duties.

> The reason for the official privilege is said to be that the threat of damage suits would otherwise 'inhibit the fearless, vigorous, and effective administration of the policies of government' and 'dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.' *Barr v. Matteo, supra,* 360 U.S. at 571, 79 S.Ct., at 1339, 3 L.Ed.2d 1434. Analogous considerations support the privilege for the citizen-critic of government. It is as much his duty to criticize as it is the official's duty to administer.... It would give public servants an unjustified preference over the public they serve, if critics of official conduct did not have a fair equivalent of the immunity granted to the officials themselves. We conclude that such a privilege is required by the First and Fourteenth Amendments.

*New York Times Co. v. Sullivan,* 376 U.S. 254 at 282–83, 84 S.Ct. 710, 11 L.Ed.2d 686 (citations omitted).

This court rejects the Commission's arguments that the *New York Times* standard does not apply to these statutes, which plainly regulate citizens' speech about public officials. The Commission maintains that the *New York Times* standard is limited only to cases in which a public official brings suit for defamatory statements published by the media but offers no citation to authority in support of that proposition. The Supreme Court has considered the application of the *New York Times* standard in a variety of contexts, most particularly in *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). In that case, the question was whether Louisiana's criminal defamation statute unconstitutionally abridged the district attorney's right to criticize state court judges at a press conference. *Id.* In finding the Louisiana statute unconstitutional, the Court held that "only those false statements made with the high degree of awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions." *Id.* at 74, 85 S.Ct. 209.

In light of the Court's extension of the *New York Times* standard in *Garrison v. Louisiana* to legislatively-created standards that restrict criticism of public officials, this court rejects the notion that the *New York Times* standard is limited solely to private defamation suits brought by a public official made or published in the media.

This court also rejects the Commission's contention that *McDonald v. Smith,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), and not *New York Times Co. v. Sullivan,* is the controlling authority in plaintiffs' challenge of these statutes. The issue in *McDonald v. Smith* was whether

the Petition Clause provides absolute immunity to a defendant charged with expressing libelous and damaging falsehoods in petitions to government officials. 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). In holding that the Petition Clause does not provide such absolute immunity, the Court said that "there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions." *Id.* at 485, 105 S.Ct. 2787. Plaintiffs' challenge here does not rest on a claim that plaintiff Dehne, or any other citizen who lodges a complaint with the Commission in the future, has absolute immunity to make false statements about public officials pursuant to the Petition Clause; therefore, *McDonald v. Smith* does not control.

■ The Commission's argument that N.R.S. §§ 281.525(1) and 281.551(2)(a) do not proscribe protected speech is based upon a misconception of the effect of these statutes. A statute that regulates speech critical of public officials and which implicitly requires the critic to guarantee the truth of every factual assertion made to the Commission on pain of statutorily imposed civil liability (and potential criminal liability) results in self-censorship and discourages public debate. These statutes are not content-neutral laws of general applicability, but are, like the campaign spending statutes in *Lind v. Grimmer,* "intended to impose direct and significant restrictions on speech." 30 F.3d 1115 at 1118. The underlying principle of the *New York Times* standard is the protection of open public debate critical of official conduct, and it applies with equal force when the legislative branch attempts to regulate citizens' comments through a legislatively-created commission. This court finds that N.R.S. §§ 281.525(1) and 281.551(2)(a) regulate protected speech, and that the *New York Times* standard governs consider-

ation of the constitutionality of the statutes.

### 2. Whether N.R.S. §§ 281.525(1) and 281.551(2)(a) serve a compelling state interest

■ The Commission is charged with investigating and taking appropriate action against alleged violations of Nevada's ethics in government laws by public officers or employees. Nevada's statutory scheme creates a public forum for the investigation and review of ethics complaints, but also attempts to protect public officials from complaints based upon false statements or those motivated by bad faith or ill will. The statutes endeavor to strike a balance between these competing, legitimate interests, and the court finds that the statutes serve a compelling state interest.

### 3. Whether N.R.S. §§ 281.525(1) and 281.551(2)(a) are narrowly drawn and comport with the New York Times standard

■ " 'Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone....' " *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980)(quoting *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)). A statute may be deemed constitutionally overbroad if a law is written so broadly that it inhibits protected speech. *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Moreover, because these statutes regulate speech critical of public officials, the *New York Times* standard requires that the speech regulated by the statutes must be made with " 'actual malice'—that is, with ... reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,*

376 U.S. 254, 279, 84 S.Ct. 710. This court finds that these statutes do not satisfy these standards.

### a. *The New York Times Standard*

▉▉▉ Nevada Revised Statutes § 281.525(1) makes statements unlawful which are "known or through the exercise of reasonable care should be known to be false, deceptive or misleading," and N.R.S. § 281.551(2)(a) punishes not only false statements, but also those found to be vexatious or made in bad faith. This language falls short of the *New York Times* standard because N.R.S. § 281.525(1) employs a "reasonable care" standard as opposed to the higher "reckless disregard" standard required by *New York Times Co. v. Sullivan,* 376 U.S. 254 at 279, 84 S.Ct. 710. Nevada Revised Statutes § 281.551(2)(a) employs no standard at all. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). If the legislature wishes to regulate speech critical of public officials, such statutes must incorporate the "actual malice" standard. *Id.; New York Times,* 376 U.S. 254 at 279, 84 S.Ct. 710. Nevada Revised Statutes § 281.551(2)(a) is also defective because it has no standard at all by which the Commission may evaluate statements it may deem untrue, vexatious, or made in bad faith.

### b. *Vagueness*

▉▉▉ To enable citizens to steer between lawful and unlawful conduct, "we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Vague laws that may be a trap for the unwary are disfavored, particularly when the statute at issue " 'abut(s) upon sensitive areas of basic First Amendment freedoms' " and it may " 'inhibit the exercise of (those) freedoms.' " *Id.* at 109, 408 U.S. 104 (citations omitted). The question then is whether the boundaries of N.R.S. §§ 281.525(1) and 281.551(2)(a) are clearly drawn. It is this court's view that they are not. The terms "false," "deceptive," "misleading," and "bad faith" are not defined, which is of great importance because the statutes seek to regulate speech critical of public officials. If the legislature wishes to trod on First Amendment ground and regulate such speech, it must do so with the utmost specificity and clarity. There lies in the plain meaning of these statutes the potential to punish protected expression about the conduct of public officials, along with the equally troubling prospect of subjective or discriminatory enforcement. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108–09, 92 S.Ct. 2294.

### c. *Overbreadth*

▉▉▉ Plaintiffs also challenge N.R.S. §§ 281.525(1) and 281.551(2)(a) as overbroad because they are content-based laws which proscribe more speech than is necessary to fulfill a compelling state interest. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). To find that a statute is overbroad, "there must be a realistic danger that the statute itself will significantly compromise recog-

nized First Amendment protections of parties not before the Court...." *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (citations omitted). These statutes may have the general effect of chilling citizens' willingness to lodge complaints about possible ethical violations by public officials. The obvious intent of the statutes is to discourage citizens from filing false allegations of ethical misconduct about public officials with the motive to harass public officials and damage their reputations. However, the statutes go beyond that compelling state interest. For example, a citizen may file a complaint about an official's alleged ethical misconduct that he or she believes is true. Even if the allegations are deemed true, the Commission may decide they are in some way deceptive or misleading; hence, the citizen may be subject to criminal and civil penalties. Nevada Revised Statutes § 281.551(2)(a) authorizes the Commission to adjudge whether a citizen is motivated by bad faith or is acting with a vexatious purpose in filing an ethics complaint. Even if the allegations of the complaint are true, a citizen may nevertheless be charged with a misdemeanor or a fine of up to $5,000.00 because the Commission finds the complaint was lodged in bad faith or for a vexatious purpose. The Commission is entitled to serve legitimate state interests, "but it must do so by narrowly drawn [statutes] designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Village of Schaumburg,* 444 U.S. 620 at 637, 100 S.Ct. 826 (citations omitted). This court finds these statutes overbroad because they proscribe more speech than is necessary and there is a realistic potential that they will discourage protected speech.

### D. Procedural Due Process

Apart from plaintiffs' challenge to the constitutionality of the statutes pursuant on First Amendment grounds, they also contend that the statutes violate the Fourteenth Amendment because the statutory framework offers no procedural due process by which a citizen is given notice of a violation of the statutes, and citizens are afforded no hearing prior to imposition of a fine or referral to the district attorney or attorney general. N.R.S. 281.525(3). Plaintiffs are correct.

■ In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation omitted), the Supreme Court identified three factors to determine whether a procedural due process violation has occurred:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The private interest at issue here is the loss of the First Amendment right of free expression, the loss of which has been held to constitute irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Jacobsen v. United States Postal Service,* 812 F.2d 1151, 1154 (9th Cir.1987). In addition, N.R.S. § 281.525(2) characterizes a violation of N.R.S. § 281.525(1) as a misdemeanor. Not only does a citizen stand to lose his or her First Amendment rights, but also faces a misdemeanor criminal penalty and a fine of up to $5,000.00.

As to the second factor, the statutes provide neither notice of the Commission's

intention to impose the sanctions allowed, nor do they provide for a hearing. The value of additional procedural safeguards is obvious. Notice of the Commission's finding that a citizen has violated N.R.S. 281.525(1), a procedure for filing a response to the notice, the opportunity for a hearing, and providing a citizen the opportunity to secure counsel are additional safeguards that should be implemented before depriving a person of the property interests described above.

The third factor concerns the government's interest, fiscal and otherwise, that will result if additional procedural safeguards are implemented. The Commission offered no evidence that providing notice and a hearing before imposing a penalty would unduly burden the Commission, and the court does not view such a procedure as unduly expensive or burdensome.

██ The Supreme Court has repeatedly held that "some form of hearing is required before an individual is finally deprived of a property interest," and that a basic tenet of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citations omitted). The importance of such safeguards is particularly important here, where the legislature seeks to regulate speech critical of public officials. In *St. Amant v. Thompson*, 390 U.S. 727, 730–31, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Court held that under the *New York Times* malice standard, the finder of fact must establish by sufficient evidence that the statement was either a deliberate falsification, or · there was evidence of reckless publication " 'despite the publisher's awareness of probable falsity. . . .'" ' Here, the importance of a hearing is especially compelling because "reckless conduct is not measured by whether a reasonably prudent man would

have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubt as to the truth of his publication." *Id.* at 731, 88 S.Ct. 1323. Because the statutes provide for no notice or an evidentiary hearing, the Commission cannot determine actual malice and must instead rely on its members' own perceptions of the citizen's intent in filing an ethics complaint. The court finds that process violates the Fourteenth Amendment and is unconstitutional.

## E. Conclusion

Nevada Revised Statutes §§ 281.525(1) and 281.551(2)(a) are unconstitutional both on their face and as applied to plaintiff Dehne. These statutes are also unconstitutionally overbroad, and they violate the Due Process provisions of the Fourteenth Amendment. Plaintiffs' cross-motion for summary judgment (# 39) is granted, and it is recommended that judgment be entered declaring N.R.S. §§ 281.525(1) and 281.551(2)(a) violate the First and Fourteenth Amendments to the United States Constitution, and that permanent injunction issue enjoining enforcement of these statutes. It is recommended that defendants' motion for summary judgment (# 36) be denied.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Court enter an order **GRANTING** plaintiffs' cross-motion for summary judgment (# 39) and that judgment be entered declaring N.R.S. §§ 281.525(1) and 281.551(2)(a) violate the First and Fourteenth Amendments to the United States Constitution, and that permanent injunction issue enjoining enforcement of these statutes.

**IT IS FURTHER RECOMMENDED**
that defendants' motion for summary judgment (# 36) be **DENIED.**

Aug. 6, 2001.